**Affirmed and Memorandum Opinion filed December 11, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00659-CR

---

**FRANK ERNEST GOMEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1237331**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Frank Ernest Gomez of robbery by threat. *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). Appellant pled true to two enhancements, and the jury assessed the maximum punishment of life imprisonment. Appellant challenges his sentence in two issues, arguing that the trial court erred by failing to (1) instruct the jury sua sponte during punishment that the jury could not consider extraneous offenses unless proven beyond a reasonable doubt; and (2) hold a hearing on his motion for new trial alleging ineffective assistance of counsel. We affirm.

BACKGROUND

On October 13, 2009, appellant approached Tania Delacruz, a shift supervisor working as a teller at a First Convenience Bank. He handed Delacruz a note that said, "This is a robbery, give me all your money." The note also said, "I have a gun," or, "I have a weapon."[1] Appellant had something under his jacket pointed at Delacruz that looked like the shape of gun; she thought it was a gun. She gave him all the money she had—about $2,500. Another teller had pressed a "panic button," which slowed down the camera security system so the camera would take more pictures. The ordeal lasted less than a minute.

Soon after the robbery, officers from the Federal Bureau of Investigation and the Houston Police Department arrived at the bank, as did a corporate security officer. Several of the tellers recognized appellant as someone who had been to the bank before, so the officers reviewed photographs of customers who recently had opened accounts with the bank. The officers compared those photographs to the ones taken during the robbery and identified appellant as a suspect based on the likeness of the photographs.

Later that day, appellant was arrested for an outstanding warrant, and an FBI agent showed appellant his photograph from the bank's surveillance video. Appellant responded, "Booyah," and commented that if the officers had that photograph, they "got him." Appellant was arrested for the robbery. On the following day, Delacruz and two other bank tellers identified appellant during a line-up; Delacruz also identified him at trial.

The jury found appellant guilty of robbery. During the punishment phase of the trial, he pled true to two enhancements for prior convictions—burglary of a habitation in 1992 and aggravated sexual assault of a child in 2001—which increased the range of confinement from 2–20 years to 25–99 years or life. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2011). The State introduced pen packets indicating that appellant

---

[1] Delacruz testified about the contents of the note; it was never recovered.

received a punishment of 15 years' confinement for the burglary and 7 years' confinement for the sexual assault. The sexual assault occurred in 1997, and the victim was 11 years old. Appellant signed a "stipulation of evidence" admitting to these two convictions as well as a robbery conviction from 1992.

The jury heard testimony from three witnesses during punishment: Delacruz, Michael Squyres, and R.M. Delacruz described how the crime impacted her. Squyres was a deputy investigator with the gang suppression unit of the Harris County Sheriff's Office, and he testified that appellant's tattoos indicated appellant was a member of the Texas Syndicate gang. R.M. was a 13-year-old girl who testified that appellant had sexually assaulted her about two years earlier after he had been released from prison for the prior sexual assault.

The court's punishment charge did not include an instruction that the jury had to find beyond a reasonable doubt that appellant committed extraneous offenses or bad acts before considering those offenses or acts for purposes of assessing punishment. Trial counsel did not object to the omission in the charge. During closing argument, counsel asked the jury to assess punishment at the minimum, 25 years; the State requested the maximum, life in prison. The jury sentenced appellant to life.

Appellant filed a motion for new trial alleging that the court erred by failing to instruct the jury regarding the burden of proof for unadjudicated extraneous offenses, and trial counsel rendered ineffective assistance for failing to object to the charge. Appellant specifically requested a hearing on the motion and attached his own affidavit. The trial court signed an order denying the motion without a hearing. Appellant filed a timely notice of appeal.

## JURY CHARGE

In his first issue, appellant contends that the trial court erred by not instructing the jury sua sponte during punishment that the jury could not consider extraneous offenses unless the jury believed the State had proved the extraneous offenses beyond a reasonable

doubt—in particular, evidence of appellant's gang membership and the sexual assault of R.M. Appellant contends that he was egregiously harmed by this error. The State agrees that the trial court erred but argues that appellant was not egregiously harmed.

## I.  Article 37.07, § 3(a), Error in the Charge

"Article 37.07, § 3, of the Code of Criminal Procedure provides that, after a finding of guilt, evidence may be offered by either party as to any matter that the court deems relevant to sentencing . . . ." *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (West 2006). The statute identifies a nonexclusive list of matters that may be considered:

> 1) the prior criminal record of the defendant; 2) the general reputation of the defendant; 3) the character of the defendant; 4) an opinion regarding the reputation of the defendant; 5) the circumstances of the offense on trial; and, 6) extraneous offenses and bad acts that are shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible.

*Bluitt*, 137 S.W.3d at 54.[2] When the State introduces evidence of extraneous offenses or bad acts during the punishment phase, the trial court has a sua sponte duty to instruct the jury that the jury may not consider such evidence in assessing punishment unless the jury "'is satisfied beyond a reasonable doubt that [such acts and offenses] are attributable to the defendant.'" *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (quoting *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999)) (alteration in original).

"The only types of evidence for which a burden of proof is articulated are

---

[2] The current version of the statute states in part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

4

unadjudicated offenses and bad acts." *Bluitt*, 137 S.W.3d at 54 (reasonable doubt instruction not required when State introduces evidence of the defendant's prior criminal record). Evidence of an unadjudicated sexual assault of a child is evidence of an "extraneous crime or bad act" under Article 37.07, § 3. *See, e.g.*, *Nelson v. State*, 126 S.W.3d 700, 703–04 (Tex. App.—Amarillo 2004, pet. ref'd); *Fowler v. State*, 126 S.W.3d 307, 310 (Tex. App.—Beaumont 2004, no pet.). But because evidence of a defendant's membership in a gang is generally viewed as character evidence[3]—a separate category of evidence expressly identified in Article 37.07, § 3—a defendant is not entitled to a reasonable doubt instruction pertaining to gang membership. *See Flores v. State*, No. 04-97-01030-CR, 1999 WL 266618, at *3 (Tex. App.—San Antonio May 5, 1999, pet. ref'd) (not designated for publication); *Pal v. State*, No. 05-95-01028-CR, 1997 WL 331009, at *7 (Tex. App.—Dallas June 18, 1997, pet. ref'd) (not designated for publication).

Accordingly, because the State introduced evidence of an unadjudicated sexual assault against R.M., the trial court erred by not sua sponte instructing the jury that it could not consider such evidence in assessing punishment unless the jury was satisfied beyond a reasonable doubt that extraneous offenses and bad acts were attributable to appellant. We next consider whether appellant was harmed by this error.

## II.    Egregious Harm

Appellant and the State agree that because trial counsel failed to object to this error, we must review the error under the "egregious harm" standard announced in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). A defendant suffers egregious harm when the error deprives the defendant of a fair and impartial trial. *See, e.g.*, *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Such errors affect the very bases of the case, deprive the defendant a valuable right,

---

[3] *See, e.g.*, *Beasely v. State*, 902 S.W.2d 452, 455–56 (Tex. Crim. App. 1995); *Anderson v. State*, 901 S.W.2d 946, 949–50 (Tex. Crim. App. 1995); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

vitally affect the defensive theory, or make a case for conviction or punishment clearly and significantly more persuasive. *See, e.g.*, *id.*; *Gholson v. State*, 5 S.W.3d 266, 270 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). The harm must be "actual, not just theoretical, harm." *Taylor*, 332 S.W.3d at 490 (quoting *Almanza*, 686 S.W.2d at 174). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). In making this determination, we review the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the entire record. *Taylor*, 332 S.W.3d at 489; *Hutch*, 992 S.W.2d at 171.

Upon reviewing the record as a whole, we conclude appellant has not suffered egregious harm.

### A. Jury Charge

The jury charge on punishment identified the two enhancements for burglary and aggravated sexual assault of a child, noted that appellant pled true to both, and instructed the jury to find the allegations true. The charge correctly identified the punishment range as 25–99 years or life. The charge also included statements about the burden of proof: (1) "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant"; and (2) "The prosecution has the burden of proving the allegations in the penalty paragraphs beyond a reasonable doubt." The jury was instructed that it "may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case." Further, the charge explained that the jury members were "the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given their testimony."

### B. State of the Evidence

The evidence of guilt was relatively straightforward: appellant robbed a bank by presenting a note to Delacruz and threatening violence. Delacruz testified at punishment that it affected her interaction with customers and she no longer worked with customers.

6

She did not seek therapy initially, but she regretted that decision and planned to seek it in the future.

Squyres described the Texas Syndicate gang as being active both in and out of prison, and its purpose is to commit criminal activity. Appellant already had a file in a gang-tracker database before Squyres met appellant and took photographs of appellant's tattoos. The photographs were admitted into evidence, and Squyres discussed their significance. Many of the tattoos indicated membership in the Texas Syndicate. For example, he had a "T.S." tattoo on his arm and "O.G." on his neck.[4] Appellant also had a tattoo with the number 15 and "AGG" on his chest, which stood for "aggravated" and indicated his sentence of 15 years. Squyres testified that appellant graduated from the GRAD program in 2008, which is a two-year program to disassociate prison inmates from gangs. Squyres also testified that he was pretty sure appellant joined the Texas Syndicate while in prison, and he acknowledged that one of the reasons inmates join a gang is for protection.

R.M. was the only witness to testify about the extraneous offense. She testified that her mother began seeing appellant when he was in prison. He came to live with them when R.M. was 9 or 10 years old. She testified that appellant sexually assaulted her a few weeks before she finished her fourth grade in school. She testified that she was watching a cartoon on television and horsing around with appellant when he pushed her down on the couch, got on top of her, took off his pants, took off her pants, put on a condom, and forced his penis in her vagina. She said it hurt, and she was thinking that if she screamed or told anyone, "he will kill us." Appellant told her not to tell anyone, and she did not initially because she "felt nasty." She told one of her friends at school but did not tell her mother until a year later. R.M. testified that her mother continued to see appellant, and R.M. felt betrayed. She was angry at her mother because her mother did not believe anything R.M. said. She testified, "It's just messed up my life."

---

[4] Squyres explained that "O.G." stood for "original gangster," which indicated appellant was a founding member, a long-standing member, or that he "put in a lot of work for the gang."

At the time of trial, R.M. was on probation for assaulting her mother and stealing a laptop from her school. She also recalled incidents where she acted out at home and the police had to be called because she was throwing things and tearing up the house. She testified that she was also touched inappropriately by her ex-boyfriend. She testified that she did not use drugs, and she initially denied telling an interviewer at the Children's Assessment Center that she used drugs, but she later admitted to telling the interviewer about using drugs. She said she told the interviewer those lies because she was "trying to be cool." R.M. admitted her purpose for testifying: "I'm here just for him not to come out no more."

Finally, the jury heard appellant plead true to both enhancements for burglary and sexual assault of a child, and the court admitted pen packets and a signed "stipulation of evidence" whereby appellant admitted to being convicted of sexual assault, burglary, and robbery. A pen packet showed that the victim of the previous sexual assault was 11 years old.

### C. Arguments of Counsel

Appellant's trial counsel asked the jury to sentence appellant to the minimum sentence of 25 years. Counsel argued that R.M. lied about doing drugs and noted that her mother did not believe her, and R.M. was on probation for assault. Counsel urged the jury to consider those things when determining her credibility. Counsel noted that appellant graduated from the GRAD program and "we don't know if he's still a member of a gang or not." Counsel explained that appellant's prior convictions made the minimum sentence 25 years even though this would normally be a crime with a 20-year maximum sentence. Counsel asked for the minimum because of the nature of the offense. Counsel said that if appellant had shown a gun, fired a gun, or killed someone, then the maximum punishment would be justified.

The State asked the jury to sentence appellant to the maximum of life imprisonment. The State asked the jury to consider four things: (1) the crime itself; (2) appellant's criminal history, which "is also going to include any type of bad acts"; (3)

mitigation evidence; and (4) the future danger that appellant posed to society. First, the State argued that appellant was calm and collected during this robbery "[b]ecause he'd already committed robbery. This wasn't new for him." The State argued that appellant "changed [Delacruz's] life forever." Next, the State focused on appellant's criminal history, noting that appellant had been released from prison after 5 years despite being sentenced to 15 years for the burglary. The State argued that appellant was a "career criminal" who had "plenty of chances to turn over a new leaf." When reviewing the timeline of appellant's criminal history, the State omitted any discussion of the aggravated sexual assault of R.M.

The State argued that there was no evidence of mitigation, and appellant's tattoos indicated that he "glorifies that lifestyle." The State then discussed future danger and noted that appellant "commits another very serious crime" every time he gets out of prison. The State discussed the sexual assault of R.M. as follows: "[Y]ou-all heard, and we put on the testimony of the rape, the newest one, where our victim, the one that you heard from, was 12 years old at the time. The first one, there was a different one, she was 11 at the time."

The State said that appellant deserved life in prison "without any regard to that rape case" because "he continually commits serious crimes against the citizens of this county." The State argued that appellant showed no remorse and he "wears it on his chest as a badge of honor." The State continued: "The reason he deserves life is that even after sexually assaulting an 11-year-old child when he was 28 years old, he had the audacity to start a relationship with a woman on the outside who had a child the same age." The State argued that appellant's crimes were consistent and serious, there was no mitigation, and appellant was dangerous. The State concluded: "No one should ever have to be sexually assaulted again. No one should have to have a threat or feel like they're being robbed again. Nobody should have to be the victim of a burglary of a habitation again."

9

## D.    *Other Relevant Information*

Other relevant information includes the fact that appellant was sentenced to the maximum possible punishment.  *See Martinez v. State*, 313 S.W.3d 358, 369 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  Further, the State suggests "the jury cared very little about R.M.'s testimony" based on the jury's questions submitted to the trial court during deliberation on punishment.  *See Render v. State*, 316 S.W.3d 846, 853–54 (Tex. App.—Dallas 2010 pet. ref'd) (reviewing jury notes to determine egregious harm). The jury submitted six questions to the court: (1) "How long was the accused out of prison after the second sentence?"  (2) "Can we have a timeline of time served versus time spent in the community?"  (3) "What year did he complete the gang removal program?"  (4) "Can we look at the list of previous convictions?"  (5) "In the past Frank Gomez was sentenced for 15 years; what was the reason for getting out early?"  and (6) "How much weight is given in sentencing to this specific crime versus the safety of the community or likeliness of rehabilitation given the previous criminal record?"

## E.  *Analysis of Egregious Harm*

Initially, we note that "maximum punishment alone does not indicate egregious harm."  *Martinez*, 313 S.W.3d at 369.  "There is no egregious harm if the jury would still have assessed a life sentence, even if properly instructed to consider only extraneous offenses if they first found that appellant had committed those offenses beyond a reasonable doubt."  *Id.*

A charge that omits the extraneous offense instruction but includes a general instruction on the State's burden of proof, as here, "weighs neither for or against a finding of egregious harm."  *Id.* at 367.  However, this charge also informed the jury that it was the sole judge of witness credibility, and the extraneous offense depended on R.M.'s credibility.  Trial counsel made this point in closing argument by attacking R.M.'s credibility.  The charge as given, therefore, weighs against a finding of egregious harm.

10

Regarding the evidence of the extraneous offense, "we consider whether the evidence was clear, strong, direct and unimpeached." *Id.* (citing *Zarco v. State*, 210 S.W.3d 816, 824–25 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). We make this determination because if a jury could believe such evidence beyond a reasonable doubt, then the inclusion of the instruction in the jury charge likely "would not have made a difference in how the jury considered the evidence." *Id.* at 368. R.M.'s testimony largely fell within this category of evidence. Although appellant attempted to discredit R.M.'s testimony by highlighting her lies about drug use and her criminal conduct (all of which postdated the alleged sexual assault), this impeachment evidence concerned "side issues that did not directly impugn the veracity of [R.M.'s] allegations." *See Zarco*, 210 S.W.3d at 827. Even if the jury believed that R.M. lied about her drug use, assaulted her mother, stole a laptop from school, and tore up her family's house on several occasions, "a reasonable juror still could have believed [her] allegations beyond a reasonable doubt." *Id.* (no egregious harm for failing to instruct on extraneous offenses during punishment); *see also, e.g.*, *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] no pet.) (rational jury can find beyond a reasonable doubt that a defendant committed aggravated sexual assault of a child based on the complainant's testimony alone).

"[W]e also compare the evidence related to the unadjudicated extraneous offense[] with the other guilt and punishment evidence in the case." *Martinez*, 313 S.W.3d at 368. The fact that appellant had a "long criminal history" weighs against a finding of egregious harm. *See id.* Indeed, the State's closing argument focused primarily on appellant's criminal record; the State sought life imprisonment "without any regard to that rape case," referring to the extraneous offense against R.M. The State did not strongly emphasize the extraneous offense in its closing argument, placing it in the context of appellant's entire criminal history. This weighs against a finding of egregious harm. *See id.* at 369 (no egregious harm in light of the appellant's entire criminal record and the State's reference to the extraneous offenses during closing argument "as part of a general theme of appellant's character"). We do not think evidence of this single

11

extraneous offense made the case for punishment clearly more persuasive in light of appellant's serious criminal history involving a robbery, burglary, and aggravated sexual assault of a different 11-year-old child. *See id.* at 368–69 (case for life imprisonment for aggravated robbery not clearly more persuasive despite evidence of multiple extraneous offenses; the appellant had a "long criminal history" including several convictions as a juvenile and two convictions as an adult for "carrying a weapon" and "the felony of unauthorized use of a motor vehicle").

Further, we note that it was undisputed that appellant had been previously convicted of the same offense that R.M. alleged. In other words, it was already undisputed that appellant had committed an aggravated sexual assault of a child. These circumstances weigh against a finding of egregious harm. *Cf. Graves v. State*, 310 S.W.3d 924, 930–31 (Tex. App.—Beaumont 2010, pet. ref'd) (no egregious harm in sexual assault of a child case for which the defendant received life in prison even though the extraneous offense evidence showed, and the State argued at punishment, that the defendant committed other sexual acts against the complainant and another child); *Sansom v. State*, 292 S.W.3d 112, 132–33 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (no egregious harm in a sexual assault of a child and indecency case when the evidence showed, and the State argued at punishment, that the defendant committed at least 104 acts of sexual abuse of a child, most of which would have been extraneous offenses); *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd) (no egregious harm in sexual assault of a child case for which the defendant received 99 years' confinement when a different child testified during punishment that the defendant also assaulted her, and the State specifically argued to the jury that it did not have the burden of proof at punishment), *aff'g after remand from* 12 S.W.3d 479 (Tex. Crim. App. 2000), *rev'g* 996 S.W.2d 702 (Tex. App.—San Antonio 1998).

Finally, the jury's questions indicate the jury was concerned about appellant's time in and out of prison and his criminal record. None of the six questions referenced the extraneous offense or R.M.'s testimony.

12

After reviewing the record as a whole, we are not convinced that the absence of the extraneous-offense-reasonable-doubt instruction during punishment affected the very bases of the case, deprived appellant a valuable right, vitally affected a defensive theory, or made the case for punishment clearly and significantly more persuasive. Appellant received a fair trial at sentencing.

Appellant's first issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, appellant contends that the trial court erred by denying his motion for new trial alleging ineffective assistance of counsel without first holding an evidentiary hearing. The State responds that the trial court could have determined, based on the record, appellant suffered no prejudice from counsel's failure to request an extraneous-offense-reasonable-doubt instruction at punishment.

We review for an abuse of discretion a trial court's denial of a hearing on a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). We will reverse only when the trial court's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Id.* A trial court abuses its discretion by refusing to hold a hearing on a motion for new trial if the motion (1) raises matters that are not determinable from the record; and (2) establishes the existence of reasonable grounds showing that the defendant could be entitled to relief. *See id.*

To obtain a new trial based on ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must establish that his counsel's performance (1) was deficient; and (2) prejudiced his defense. *Smith*, 286 S.W.3d at 340. To show prejudice, a defendant must prove that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* (quotations omitted). "Before he will be entitled to a

13

hearing on his motion for new trial alleging ineffective assistance of counsel, a defendant must allege sufficient facts from which a trial court could reasonably conclude ***both*** that counsel failed to act as a reasonably competent attorney ***and*** that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Id.* at 340–41.

Initially, we note that several courts of appeals have reasoned that if counsel's failure to request an extraneous-offense-reasonable-doubt instruction at punishment does not deprive the defendant of a fair trial under the *Almanza* egregious harm standard, then the defendant similarly cannot establish prejudice under *Strickland* because counsel's errors were not so serious as to deprive the defendant a fair trial. *See Graves v. State*, 176 S.W.3d 422, 437 (Tex. App.—Houston [1st Dist.] 2004, pet. struck); *Allen v. State*, 47 S.W.3d 47, 54–55 (Tex. App.—Fort Worth 2001, pet. ref'd).

Appellant suggests that *Ex parte Varelas*, 45 S.W.3d 627 (Tex. Crim. App. 2001), is instructive. We disagree. In *Ex parte Varelas*, the Court of Criminal Appeals found prejudice when trial counsel failed to request a reasonable doubt instruction ***and*** a limiting instruction on the use of extraneous offense evidence during the ***guilt-innocence phase*** of the trial. *Id.* at 630. Varelas was convicted of murdering of his ten-year-old stepdaughter, and the State attempted to show his state of mind, intent, relationship, and motive by introducing evidence of extraneous bad acts Varelas committed against the victim. *Id.* The court began its analysis with the following propositions: (1) "[e]xtraneous acts are generally inadmissible at the guilt/innocence stage of a trial"; (2) a defendant should not be convicted of "being a criminal generally"; and (3) the State is permitted to introduce such evidence only for a "limited purpose." *See id.* at 630–31 (quotations omitted). However, these considerations do not apply during the punishment phase of a trial when extraneous offense evidence is expressly admissible by statute—as is a defendant's criminal history—and there are no express limitations on the use of such evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3.

14

The court in *Ex parte Varelas* reasoned that it was "reasonable to presume that the jury did not necessarily find beyond a reasonable doubt that the extraneous acts were committed by [appellant] before using this evidence against him." 45 S.W.3d at 633. But the court also explained that the extraneous offense evidence was "central to the State's case." *Id.* at 34. In the present case, as discussed above regarding the lack of egregious harm, the State did not focus on the extraneous offense evidence when arguing for appellant's punishment; the State asked for a sentence of life imprisonment based on appellant's criminal history as a whole "without any regard to that rape." And given appellant's criminal history, which already included the aggravated sexual assault of an 11-year-old, we conclude the extraneous offense evidence was not central to the State's case for life imprisonment.

Further, we note that fixing a punishment within the prescribed range is "essentially a normative judgment," and the jury's discretion to impose any punishment within the range is "essentially unfettered." *Smith*, 286 S.W.3d at 344 (quotations omitted). Satisfying the *Strickland* prejudice prong is incredibly difficult when challenging a sentence assessed within the prescribed range. *See id.* at 345–46 (Meyers, J., dissenting). We do not find a reasonable probability—rather than a mere theoretical possibility—that but for counsel's alleged deficiency, the outcome of the proceeding would have been different. Counsel's error did not deny appellant a fair trial.

Accordingly, the trial court could have concluded that appellant's motion for a new trial did not establish a reasonable ground entitling him to relief. *See Smith*, 286 S.W.3d at 345. The court acted within its discretion by denying the motion without a hearing.

Appellant's second issue is overruled.

**CONCLUSION**

Having overruled both of appellant's issues, we affirm the trial court's judgment.


                              /s/          Sharon McCally
                                           Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[5]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.