In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00202-CR
NO. 09-14-00203-CR
NO. 09-14-00204-CR
NO. 09-14-00205-CR
NO. 09-14-00206-CR
NO. 09-14-00207-CR
NO. 09-14-00208-CR
NO. 09-14-00209-CR

_____

**JOSE DIEGO CRUZ-ESCOBAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-03-03342 CR (Counts 1, 2, 3, 4, 5, 6, 7, 8)**

**MEMORANDUM OPINION**

A jury found appellant Jose Diego Cruz-Escobar (Cruz-Escobar or appellant) guilty of four counts of aggravated sexual assault of a child, a first degree felony, and also found him guilty of four counts of indecency with a child by sexual contact, a second degree felony. *See* Tex. Penal Code Ann. §

1

22.021(a)(1)(B) (West Supp. 2014), § 21.11(a)(1) (West 2011). The judge assessed punishment at forty years of confinement for each count of aggravated sexual assault and twenty years of confinement for each count of indecency with a child, with the sentences to run consecutively. In a single appellate issue, Cruz-Escobar contends he received ineffective assistance of counsel. We overrule his issue and affirm the judgments.

FACTUAL BACKGROUND

Cruz-Escobar was indicted for multiple sexual offenses against J.G., a thirteen-year-old boy. According to the indictment and the testimony at trial, the offenses occurred on four separate dates in 2011. Cruz-Escobar and J.G.'s mother, M.G., were in a five-year relationship when Cruz-Escobar and M.G. previously lived in El Salvador, their country of origin. Their relationship ended when Cruz-Escobar moved to the United States.

M.G. then met and married Victor, and M.G. and Victor also moved to the United States. After M.G. and Victor moved to the United States, M.G. and Victor had three children, including their oldest, J.G. Victor died in 2007, and sometime after Victor died, Cruz-Escobar started dating M.G. again and he moved in with M.G. and her children. M.G.'s adult niece and the niece's baby also lived with them. Cruz-Escobar had his own bedroom; Maria slept with her three children in another bedroom.

2

Each of the offenses against J.G. occurred early in the morning after M.G. left to go to work and before all the children were awake. At trial, J.G., the victim, testified that Cruz-Escobar entered the bedroom where J.G. and his younger brother and sister were sleeping, and Cruz-Escobar then fondled and sodomized J.G. on four different occasions. Cruz-Escobar told J.G. not to tell anyone. J.G. testified that he did not report the offenses at the time they occurred because he did not want his mother to worry or be sad and because he was scared.

About a year after the offenses occurred, M.G. asked Cruz-Escobar to move out because she learned he had been sexually inappropriate with her niece. Several months later, J.G. heard his mother and the niece talking, and they said that Cruz-Escobar was going to marry M.G.'s cousin. J.G. knew that M.G.'s cousin also had a child, and J.G. decided to tell his mother about Cruz-Escobar's sexual offenses against him because he did not want the same thing to happen to M.G.'s cousin's child.

About two weeks after J.G. reported the incidents to his mother, the family reported the offenses to the police. A warrant was issued for Cruz-Escobar's arrest, and the grand jury indicted Cruz-Escobar on four counts of aggravated sexual assault of a child and on four counts of indecency with a child by sexual contact.

ISSUE ON APPEAL

Cruz-Escobar asserts the trial court erred in allowing evidence and testimony about his "race, ethnicity, and national origin[,]" which he claims denied him "equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and article 1 section 3A of the Texas Constitution." Additionally, he argues that he received ineffective assistance of counsel. Cruz-Escobar complains that, throughout the trial proceedings, the court erred by allowing evidence and testimony regarding his race, ethnicity, and national origin. He argues that because his defense counsel failed to object to the evidence and testimony and made comments concerning Cruz-Escobar's national origin, he was denied effective assistance of counsel.

To the extent the appellant complains for the first time on appeal that the trial court erred in allowing evidence and testimony at trial regarding his "race, ethnicity, and national origin[,]" which thereby denied him "equal protection of the laws[,]" he did not raise any such objection at trial, nor does he brief a basis for such challenge on appeal. While there may be limited categories of complaints that the Court of Criminal Appeals has allowed to be raised in the absence of a timely and specific objection, motion, or complaint, neither Cruz-Escobar's objection that the trial court erred in admitting evidence nor his equal protection complaint fit within the limited categories recognized by the Court of Criminal Appeals. *See Saldano v. State*, 70 S.W.3d 873, 888-90 (Tex. Crim. App. 2002) (explaining that

4

the error preservation rules apply except for two small categories of errors: "violations of 'rights which are waivable only' and denials of 'absolute systemic requirements[,]'" holding that defendant waived a constitutional equal protection claim due to the failure to preserve error by failing to object at trial; also holding that an appellant who failed to object to the admission of testimony at trial had not preserved the issue for review on appeal). Because the Rules of Appellate Procedure require Cruz-Escobar to demonstrate that he objected and obtained a ruling on an alleged error regarding the trial court's admission of the evidence and on his equal protection claim, which Cruz-Escobar did not do, we may not now consider these complaints that he raises for the first time on appeal. *See* Tex. R. App. P. 33.1(a) (to preserve error for appeal, a party must make the challenge to the trial court and obtain an adverse ruling thereon).

Nevertheless, an ineffective assistance claim will generally not be foreclosed because of an appellant's inaction at trial. *See Robinson v. State*, 16 S.W.3d 808, 809-10 (Tex. Crim. App. 2000). Therefore, even though Cruz-Escobar did not bring his ineffective assistance of counsel claim to the attention of the trial court, we will examine the merits of his ineffective assistance claim.

## STANDARD OF REVIEW

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

5

that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, Cruz-Escobar must establish that (1) trial counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Id.* at 687-88; *see Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (holding *Strickland* standard applies to ineffective assistance claims under the Texas Constitution.) An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *See Perez*, 310 S.W.3d at 893; *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When determining the validity of a defendant's claim of ineffective assistance of counsel, our judicial review must be "highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App.

6

2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *Chambers v. State*, 903 S.W.2d 21, 32-33 (Tex. Crim. App. 1995); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *Tong*, 25 S.W.3d at 712. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The appropriate context is the totality of the representation; counsel is not to be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

Direct appeal is usually an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped. *Goodspeed*, 187 S.W.3d at 392 (citing *Thompson*, 9 S.W.3d at 813-14); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic

7

decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."). "The reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A petition for writ of habeas corpus usually is the more appropriate method for a defendant to raise a claim of ineffective assistance of counsel. *Id.* Where the record is silent as to counsel's motivations, a reviewing court will not speculate thereon. *See Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). And when the record is silent as to the motivation of counsel, we will not find ineffective assistance of counsel unless counsel's conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or mean the representation must be errorless. *See Ingham*, 679 S.W.2d at 509. Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See id.*; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977). In order to meet his burden regarding his claim that his counsel was ineffective for failing to object to evidence, appellant must also

establish that the trial court would have committed error in overruling such objection had an objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

COUNSEL'S ALLEGED DEFICIENCIES

Appellant contends that his national origin "was made a focal point of the trial from its beginning." Appellant contends that the focus began during voir dire, when the trial judge commented to the venire as follows:

> . . . the court-appointed interpreters have had testing and training and they have a lot of years['] experience. And it does kind of matter where you are from.
> And I don't know where this defendant is from, but we had a case recently where the defendant was from, I believe, Cuba. . . . the way that he would phrase things was different than the way that people from Mexico, for instance, phrase things.
> . . .
> . . . I had an instructor from Puerto Rico. . . . There are some words that are a little different.
> Especially Argentina -- they have a whole different little French thing going on. It is hard for me to understand people from Argentina and Cuba because they speak really really fast.

Next, the appellant points to what the prosecutor stated in response, which was "I do good [sic] with people testifying from Honduras. I can understand them[.]"[1]

---

[1]Appellant also highlighted in his brief an exchange concerning the use of interpreters that took place in a bench conference, "outside the hearing of the jury panel":

THE COURT: Where is your client from?
[Defense counsel]: El Salvador.
[State's counsel]: Not only that, but his grammar is atrocious.

9

Appellant complains that during the prosecutor's opening statement, the prosecutor made a remark that the defendant and J.G.'s mother were "boyfriend and girlfriend in El Salvador" for several years. Further, he argues that throughout the trial various witnesses testified that Cruz-Escobar and J.G.'s mother were from El Salvador.

Specifically, Cruz-Escobar points out that Mayra Domingue (Domingue), a forensic interviewer for Children's Safe Harbor, testified that she discussed El Salvador with J.G., the victim, while building rapport with him because J.G. had been to El Salvador and Domingue herself was originally from El Salvador. Cruz-Escobar's attorney questioned Domingue concerning whether Hispanics have "different personal space than Americans." She responded "It depends on families. Hard to generalize. . . . I hate to stereotype."

Appellant argues that detective Shannon Spencer (Spencer), a witness for the State, also mentioned Appellant's national origin and that she "left the jury with the false impression that Appellant was an illegal alien. . . ." Specifically, Appellant complains of the following testimony by Spencer:

> I met with [Cruz-Escobar's] employer on August 28th, 2013. . . . he did provide me with what he had in his file -- he didn't know where he was living -- and a copy of his driver's license.
> I noticed that picture was the same picture -- or picture literally that was on his permanent resident card. And I ran the number that was on the driver's license and it came back to a person who was not

him. So that concerned me that he didn't have legal status here. I wasn't quite certain at that time if he did or not . . . .

Finally, appellant complains that defense counsel made an improper comment during his closing argument, when Defense counsel stated, "my client is short, swarthy, doesn't speak English. And I know that you know he is from El Salvador." Appellant argues this comment was a "slur[,]" "unflattering[,]" and an improper emphasis on Cruz-Escobar's national origin.[2]

## ANALYSIS

The record in the case at bar is silent as to why appellant's trial counsel decided not to object to the challenged testimony or comments concerning Cruz-Escobar's national origin, or why he decided to include the complained-of statement in his closing argument about Cruz-Escobar being from El Salvador. Where, as here, the record is silent as to the underlying reasons for counsel's conduct, we will not speculate about them. *See Bone*, 77 S.W.3d at 835 ("Ineffective assistance of counsel claims are not built on retrospective speculation[.]"); *see also Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App.

---

[2]Appellant argues on appeal that the evidence in this case was "thin," which makes it "particularly susceptible to [the jury] relying upon improper arguments, such as nation of origin, to make [its] determination." But Appellant does not argue on appeal that the verdict was legally or factually insufficient.

Appellant also argues that defense counsel "initiated testimony from [a witness] regarding an extraneous bad act, which was sexual in nature." Appellant fails to identify the testimony by a citation to the record or how the admission of this evidence was unreasonable based on prevailing professional norms.

11

2001) ("[T]he bare record does not reveal the nuances of trial strategy."). However, employing the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" we note that a number of the complained-of remarks occurred within the context of explaining how the witnesses knew the defendant, each other, or J.G.'s family, or how the defendant knew J.G.'s family, and we cannot say that the failure to object to such testimony was unsound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d at 51; *Tong*, 25 S.W.3d at 712. Furthermore, there is a lack of evidence in the record from which we can ascertain defense counsel's motivation in remarking that "my client is short, swarthy, doesn't speak English. And I know that you know he is from El Salvador[.]" We decline to speculate about counsel's reasons for including this statement in his closing. The appellate record provides no basis for us to conclude that trial counsel's strategy underlying this comment was unreasonable based on prevailing professional norms.[3]

Texas courts have long held that a defendant's race, ethnicity, or national origin should not be a focal point in a criminal prosecution. *See Ramirez v. State*, 65 S.W.3d 156, 158 (Tex. App.—Amarillo 2001, pet. ref'd); *Riascos v. State*, 792

---

[3]Cruz-Escobar did not file a motion for new trial to allege ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (explaining that ineffective assistance of counsel may be raised in a motion for new trial, and an evidentiary hearing on the motion may develop relevant evidence.).

S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). And, depending upon the totality of the record, in some circumstances when defense counsel makes prejudicial references to the defendant, ineffective assistance may occur. *See Ramirez*, 65 S.W.3d at 158-60; *Ex parte Guzmon*, 730 S.W.2d 724, 733-34 (Tex. Crim. App. 1987).

For example, in *Ramirez*, the court held that defense counsel acted below an objective standard of reasonableness because the attorney remained silent while the jury heard evidence of his client's drinking habits, he referred to his own client as a "drunk Mexican" during summation, and he remained silent when the State then used the same phrase to characterize the defendant. *Ramirez*, 65 S.W.3d at 158-60. In *Guzmon*, a habeas proceeding, the court held that a defendant was denied effective assistance of counsel where his counsel repeatedly referred to the defendant as a "wetback" when jury members had indicated during voir dire that illegal aliens might not be entitled to as much protection as U.S. citizens. *Guzmon*, 730 S.W.2d at 733-34.

In this case, however, we do not deem trial counsel's comments or any witness testimony pertaining to El Salvador to be the same type of prejudicial and inflammatory comments that were at issue in *Ramirez* or *Guzmon*, nor do we conclude that Cruz-Escobar's race, ethnicity, or national origin were focal points of the trial. We also lack any basis in the record before us to conclude that the alleged

13

failure of his defense counsel to object to the testimony in question, or defense counsel's own statement during closing relating to Cruz-Escobar were "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Cruz-Escobar has failed to establish the first *Strickland* prong, i.e., that trial counsel's representation fell below the objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of . . . deficient performance . . . defeats the ineffectiveness claim."); *see also Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (deciding the record was insufficient to address ineffective assistance of counsel claims where it did not sufficiently show that counsel's representation was deficient as to tactical and strategic decisionmaking).

When a defendant fails to satisfy one prong of the *Strickland* test, a court need not consider the other prong. *Garcia*, 57 S.W.3d at 440 (citing *Strickland*, 446 U.S. at 697). Nonetheless, we also further conclude that appellant has failed to establish that there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficient performance. Rather, appellant has made only the conclusory argument that the cumulative effect of all of the comments concerning Cruz-Escobar's nationality was that he received "an unfair trial." Cruz-Escobar has failed to demonstrate that, but for counsel's alleged errors, the outcome of his trial would have been different. *See Bone*, 77 S.W.3d at

14

833; *Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd). We reject Cruz-Escobar's ineffective assistance of counsel claim, and we overrule his issue.

We affirm the trial court's judgments.

AFFIRMED.

_____<br>
LEANNE JOHNSON<br>
Justice

Submitted on January 7, 2015
Opinion Delivered March 4, 2015
Do not publish

Before Kreger, Horton, and Johnson, JJ.