**Larry Dean GRAVES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–09–00171–CR.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 19, 2010.

Decided May 5, 2010.

Joseph C. "Lum" Hawthorn, Zack Hawthorn, Hawthorn & Hawthorn, P.C., Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Ann Manes, Asst. Crim. Dist. Atty., Beaumont, for the State.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury convicted appellant Larry Dean Graves of aggravated sexual assault of a child and assessed punishment at imprisonment for life. Graves then filed this appeal, in which he raises four issues for our consideration. In his first issue, Graves argues he received ineffective assistance of counsel. In his second and third issues, Graves asserts the trial court erred by refusing to give a "beyond a reasonable doubt" instruction concerning extraneous offenses admitted during the guilt/innocence and punishment phases. In his fourth issue, Graves contends the trial court erred by failing to give him a full *Jackson v. Denno* hearing. We affirm the trial court's judgment.

### PERTINENT EVIDENCE

The victim, B.G., testified that Graves adopted her after marrying her mother when B.G. was a child. According to B.G., during the spring semester of her sixth grade school year, Graves came into her bedroom and touched her genital area, but she did not tell anyone. B.G. testified that the next day, Graves picked her up from school, so she was alone in the house with him. B.G. explained that she went to her room to take a nap, but Graves awakened her, lifted her shirt, and began to massage her breasts, and Graves then removed her shorts and began touching her female sexual organ. According to B.G., after a few minutes, Graves removed her underwear and penetrated her female sexual organ with his finger. B.G. explained that she did not feel that it was safe to tell her mother what had happened. B.G. testified that she continued to reside with Graves, her mother, and her siblings for about two more years, and Graves fondled her on other occasions. In addition, B.G. testified that on one occasion, Graves physically assaulted her, and her mother notified the police. B.G. testified that in April of 2002, she decided to move in with her grandmother, who lived nearby. B.G. explained that as she went through junior high and entered high school, she did not experiment with sex; instead, she was saving sex for marriage, and she wore a ring to so indicate. B.G. explained that from 2000 to

2005, while she was living with her grandmother, Graves did not abuse her.

B.G. testified that when Hurricane Rita occurred in September of 2005, she had to evacuate with her mother, Graves, her siblings, and her grandmother. According to B.G., during the evacuation, Graves touched her breasts on one occasion, and another time, he touched her female sexual organ. B.G. explained that eventually, Graves put her on the bed, removed her pajama bottoms and underwear, and penetrated her sexual organ with his fingers and then with his sexual organ. Graves's counsel did not object to B.G.'s testimony. When the prosecutor asked B.G. whether anything else happened, B.G. responded, "Not to me, thankfully. But the night that the rape actually happened—[,]" and the following exchange between defense counsel and the trial court then occurred:

[Defense counsel]: Your Honor, I object. She's testifying as to hearsay.

THE COURT: It's overruled.

[Defense counsel]: And, also, Your Honor, if we're getting into one of those extraneous matters that we talked about, we would ask for a hearing on that matter.

THE COURT: We'll have to see where it goes. If we get to that point, I'll certainly do that.

The prosecutor then elicited testimony from B.G. concerning an incident involving one of B.G.'s siblings. B.G. testified that the incident with Graves was the only time she had ever been penetrated by a male sexual organ.[1]

Jeffrey Wilmore, former Chief Deputy in the city of Groves, testified that he investigated the case involving B.G. After taking B.G.'s statement, Wilmore interviewed Graves. Wilmore testified that Graves voluntarily came to the meeting. When the prosecutor asked whether Graves was free to leave and Wilmore responded affirmatively, defense counsel objected and requested a hearing. At the hearing, which was conducted outside the presence of the jury, Wilmore testified that Graves was not under arrest at the meeting, but came voluntarily and was always free to leave. Wilmore testified that he did not arrest Graves the day the meeting concluded. During cross-examination, Wilmore explained that B.G. had identified Graves as the perpetrator when the interview took place. Wilmore also testified that he did not give Graves *Miranda* warnings. According to Wilmore, he gave Graves *Miranda* warnings during a subsequent interview because Wilmore was taking Graves's statement. According to Wilmore, when asked about specific instances of sexual contact with B.G., Graves's response was "I don't remember doing that." Wilmore explained that Graves's responses struck him as very unusual. Defense counsel eventually stated that he had no other questions for Deputy Wilmore.

The trial court found that Graves's statements were freely and voluntarily given, and that they were taken pursuant to a noncustodial interrogation. After the trial court made its findings, the following exchange occurred between defense counsel and the trial court:

[Defense counsel]: Oh, Your Honor, I'm sorry. Because it was a hearing as to voluntariness, I needed to call Mr. Graves to testify as to his voluntarily presenting himself for—

THE COURT: And I'll let you do that. We're going to do that after—we'll do it after work. We'll do it on a break.

---

1. A certified sexual assault nurse examiner testified that she examined B.G. and found a healed tear of B.G.'s hymenal tissue that was consistent with sexual intercourse having occurred several weeks or months before the examination.

We'll do it sometime. But as far as my ruling, my ruling is to this witness [sic]; and I do find that they were freely and voluntary [sic] given.

The trial court then admitted into evidence two tape-recorded statements given by Graves. The State then presented the remainder of its case, and after unsuccessfully moving for a directed verdict, Graves presented his defense.

During the punishment phase, Graves's biological daughter, R.G., testified that Graves touched her genital area eight to ten times. Defense counsel did not object to R.G.'s testimony. On cross-examination, defense counsel asked R.G. whether she was certain that Graves intended to put his hand inside her underwear and to go further if she had not gotten up, and R.G. responded affirmatively to both questions. In addition, defense counsel asked R.G. exactly what type of sexual contact occurred, and R.G. responded that Graves "rubbed his hands under my panties right above my pubic area." Graves's brother testified that he saw Graves put his hand in R.G.'s pants, which made him uncomfortable, but he did not believe Graves did so for sexual gratification.

## ISSUE ONE

 In his first issue, Graves argues that trial counsel provided ineffective assistance by failing to request proper notice from the State of its intent to use extraneous offense evidence, failing to obtain rulings on motions, failing to request hearings, and failing to object to the admissibility of "highly prejudicial extraneous offenses[.]" Graves complains that although he was indicted for penetrating B.G.'s sexual organ by inserting his finger, the jury heard evidence of several other "sexual bad acts" he committed against B.G. without objection from his counsel. In addition, Graves maintains that when

the trial court admitted the extraneous offense evidence, counsel was ineffective when he failed to request that the trial court conduct a balancing test under Rule 403 of the Texas Rules of Evidence. *See* TEX.R. EVID. 403. Graves also complains that although defense counsel filed a motion in limine, a motion for notice of the State's intention to use extraneous offense evidence at trial, a motion pursuant to article 38.37 of the Texas Code of Criminal Procedure, and a motion for discovery of punishment evidence, defense counsel did not obtain rulings from the trial court on the motions. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.2009). Furthermore, Graves asserts that counsel was ineffective because counsel did not file a motion requiring the State to give notice of its intent to introduce punishment evidence.

 To prevail on a claim of ineffective assistance of counsel, Graves must satisfy a two-pronged test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). Texas courts have held that *Strickland* requires an appellant to show a reasonable probability that, but for his counsel's errors, the outcome of his trial would have been different. *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). "Appellate review

of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id.* Appellant must prove there was no plausible professional reason for specific acts or omissions of his counsel. *Id.* at 836. Furthermore, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999) (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996)). Because the reasonableness of counsel's decisions and strategy often involves facts that do not appear in the appellate record, the record on direct appeal is generally insufficient to support a claim of ineffective assistance. *Id.* at 813–14. The mere fact that another attorney might have tried the case differently does not support a finding of ineffective assistance of counsel. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Crim.App.1983).

Graves did not file a motion for new trial to develop a record supporting his ineffective assistance claim; therefore, we have no explanation as to the reasons for counsel's decisions. However, assuming without deciding that Graves could meet the first prong of *Strickland,* Graves has not demonstrated that, but for counsel's alleged ineffective assistance, the result of his trial would have been different. *See Bone,* 77 S.W.3d at 833. Accordingly, we overrule issue one.

### Issue Two

In his second issue, Graves argues the trial court erred by failing to give a "beyond a reasonable doubt" instruction regarding the extraneous sexual offenses that were introduced during the punishment phase. The record reflects that Graves did not request a beyond-a-reasonable-doubt instruction, nor did he object to the punishment charge on the basis that it did not include such an instruction. The State argues that this instruction was given in the punishment section of the charge; however, the record reflects that when the trial court read the punishment charge to the jury, it did not include the instruction. In determining whether reversible jury charge error occurred, we must first determine whether charge error exists and then determine whether the error harmed the defendant. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003). When, as here, the defendant failed to object to the charge, we will reverse only if the error was "so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984).

The Code of Criminal Procedure provides that during punishment, the State and the defendant may offer evidence

> as to any matter the court deems relevant to sentencing, including but not limited to ... any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp.2009). Regardless of whether the defendant requests such an instruction, the trial court is required to instruct the jury that extraneous offenses must be proved beyond a reasonable doubt. *See Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App.2000). If a defendant fails to object to the charge, the trial court's failure to give the instruction is

subject to the egregious harm analysis. *Id.* at 484–85.

We hold that it is error to fail to instruct the jury in the punishment phase of the charge that any extraneous offenses must be proved beyond a reasonable doubt. *See id.; see also* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Therefore, we now examine the record to determine whether Graves was egregiously harmed. *See Almanza,* 686 S.W.2d at 171. The harm we must consider "is the impact of the omission in the jury charge of a reasonable-doubt instruction." *Ellison v. State,* 86 S.W.3d 226, 228 (Tex.Crim. App.2002). Egregious harm exists if a defendant did not receive a fair and impartial trial as a result of the omission of the instruction, and we consider particularly whether the error made the case for punishment clearly and substantially compelling. *Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (citing *Almanza,* 686 S.W.2d at 172); *Saunders v. State,* 817 S.W.2d 688, 692 (Tex. Crim.App.1991). In analyzing whether egregious harm occurred, we must consider the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the entire trial record. *Almanza,* 686 S.W.2d at 171; *see also Hutch,* 922 S.W.2d at 171. "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch,* 922 S.W.2d at 171.

We first examine the charge as a whole. *See Almanza,* 686 S.W.2d at 171. In the guilt/innocence phase, the trial court's charge included an instruction to the jury that any extraneous offenses had to be proved beyond a reasonable doubt. The testimony of B.G. and R.G. concerning Graves's unadjudicated extraneous sexual acts was clear, direct, and unimpeached.

The jury could have reasonably believed the extraneous offense evidence beyond a reasonable doubt. *See generally Zarco v. State,* 210 S.W.3d 816, 824–26 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Therefore, we cannot infer that the inclusion of a beyond-a-reasonable-doubt instruction in the court's punishment charge regarding the extraneous offenses would have changed how the jury considered the evidence. *See generally id.* In addition, considering B.G.'s testimony concerning the occurrence of digital penetration as alleged in the indictment, the evidence concerning the unadjudicated offenses does not make the case for punishment clearly more persuasive. *See generally Saunders,* 817 S.W.2d at 692.

During its punishment argument, the State referred once to R.G.'s testimony, stating that Graves "starts messing with little girls, his own family of little girls, including his own flesh and blood, [R.G.], the only daughter that he fathered. Tried to, at least, many times, tried to do to her what he did to [B.G.]." The prosecutor also mentioned Graves's brother's testimony that what he had seen Graves do to R.G. disturbed him. However, the State also discussed Graves's prior felony conviction, the severity of the crime, the need to protect society, and its contention that Graves could not be rehabilitated. Defense counsel simply asked the jurors to "do what you think is right; but please make sure that it is what you think is right." The portions of the State's argument quoted above constitute the only references to the extraneous offenses during closing arguments, and the State did not otherwise emphasize the extraneous offenses during its closing argument. We conclude that the arguments of counsel do not support a finding of egregious harm.

Considering the state of the evidence, the arguments of counsel, as well as the

record as a whole, we conclude that Graves was not egregiously harmed by the trial court's omission of a beyond-a-reasonable-doubt instruction from the punishment charge. Accordingly, we overrule Graves's second issue.

## Issue Three

■■■ In his third issue, Graves contends the trial court erred by failing to give the "beyond a reasonable doubt" instruction he requested regarding extraneous offenses that were introduced during the guilt/innocence phase. Specifically, Graves argues that the trial court should have included as part of the second paragraph of its extraneous offense instruction a statement that the jury could only consider Graves's extraneous offenses if it found they had been proved beyond a reasonable doubt. The trial court's guilt/innocence charge included the following instruction concerning extraneous offenses:

**Extraneous offense:**

Evidence may have been introduced in this case regarding the defendant's having committed offenses other than the offense now alleged against him. You cannot consider this testimony for any purpose unless you believe beyond a reasonable doubt that the defendant committed such other offenses, if any. Even then you may only consider the same in determining the identity of the defendant or the issues of intent, motive, system, scheme, or design in connection with this offense and no other purpose.

Evidence of crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense may be considered for its bearing on relevant matters, including, number one, the state of mind of the defendant and the child; and, number two, the previous and subsequent relation-ship between the defendant and the child.

At the charge conference, defense counsel objected as follows: "Your Honor, I don't have any objections to the charge except that—well, I guess it is an objection. On the 'extraneous offense' page, the second part of it, we would ask the Court to include language that the jury has to consider that beyond a reasonable doubt in order to use it in its deliberations." The trial court overruled counsel's objection and included the instruction as worded above.

We must first determine whether error occurred. *Middleton,* 125 S.W.3d at 453. Because Graves preserved the issue by objecting at trial, if we find that error occurred, we must reverse unless the error is harmless. *See Almanza,* 686 S.W.2d at 171. The Code of Criminal Procedure requires the trial court to give the jury "a written charge distinctly setting forth the law applicable to the case[.]" TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). The trial court's extraneous offense instruction accurately and distinctly stated the applicable law: that is, it informed the jurors that before they could consider any of Graves's extraneous offenses, they must believe beyond a reasonable doubt that Graves committed the extraneous offenses. The second paragraph of the instruction simply contained additional instructions to the jury concerning the purposes for which it could consider particular extraneous offenses. We find that the trial court did not err by denying the re-worded instruction Graves requested. *See generally id.* Accordingly, we overrule issue three.

## Issue Four

■■■ In his fourth issue, Graves argues that the trial court erred by failing to give him a full hearing concerning the volun-

tariness of his statements.[2] As discussed above, defense counsel did not attempt to call Graves to testify until after the hearing had concluded and the trial court had made its findings. In addition, when defense counsel stated that he had intended to call Graves to testify, the trial court indicated that it would permit Graves to testify later in the proceeding, yet the record does not reflect that defense counsel ever sought to call Graves to testify after the trial court's statement. By failing to create a record containing whatever evidence Graves wanted to present regarding the voluntariness of his confession, he failed to preserve the issue. *See* TEX. R.APP. P. 33.1(a). Accordingly, we overrule issue four and affirm the trial court's judgment.

AFFIRMED.

---

**2.** *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).