**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00477-CR**
_____

**DEMETRIUS DONIELLE JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CR30173**

## MEMORANDUM OPINION

A jury convicted Demetrius Donielle Jackson of sexual assault and the trial court sentenced Jackson to ninety-nine years in prison. In nine appellate issues, Jackson contends that the jury charge, the verdict forms, and the verdict were defective, the State engaged in improper jury argument, and trial counsel rendered ineffective assistance. We affirm the trial court's judgment.

1

The Jury Charge

In issues one through seven, Jackson contends that the jury charge, the verdict forms, and the verdict were defective. When reviewing complaints regarding the jury charge, we must first determine whether there was error in the charge. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). When, as here, the appellant did not object to the alleged error, we must reverse if the error is "'so egregious and created such harm'" that the defendant did not receive a fair and impartial trial. *Id*. at 26 (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). We consider (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the parties' arguments, and (4) any other relevant information found in the record as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

The indictment in this case alleges a single count composed of two discrete paragraphs:

> THE GRAND JURY, duly selected, organized, sworn and impaneled as such for the County of Liberty, State of Texas, at the January term, A.D. 2013, of the 75th Judicial District Court for said County, upon their oaths do present in and to said Court that on or about the 20th day of December A.D. 2012, in the County of Liberty and State of Texas, and anterior to the presentment of this indictment, DEMETRIUS DONIELLE JACKSON did then and there intentionally or knowingly cause the sexual organ of defendant to contact and/or penetrate the mouth of Mary Ann, a pseudonym, without the consent of Mary Ann, a pseudonym,

2

And the Grand Jurors aforesaid do further present in and to said court that on or about the 20th day of December, 2012, in Liberty County, Texas, the said DEMETRIUS DONIELLE JACKSON did then and there intentionally or knowingly cause the sexual organ of defendant to contact and/or penetrate the sexual organ of Mary Ann, a pseudonym, without the consent of Mary Ann, a pseudonym[.]

At trial, Mary Ann testified that on December 20, 2012, she was standing at her front door watching a friend drive away when a man approached her. The man pushed the door open, grabbed Mary Ann, and took her to the bedroom. Mary Ann testified that she felt scared and the man told her not to fight. The man forced Mary Ann onto the bed, had sexual intercourse with her, and forced her to perform oral sex. Afterward, the man asked for money. When the man allowed Mary Ann to use the restroom, she locked herself inside until he left. She explained that she feared for her life.

Bennie Dooley, Mary Ann's neighbor, heard Mary Ann knocking on his door and crying. Dooley testified that Mary Ann was hysterical, upset, and "roughed up." Mary Ann told Dooley that she had been raped. Dooley called 9-1-1. When Officer Kevin Potter arrived, he observed that Mary Ann was distraught, crying, disheveled, scared, and shocked. Paramedic Amanda Thomas testified that Mary Ann was upset, shaking, hyperventilating, and tearful. Mary Ann told Potter and Thomas that she had been sexually assaulted, and she told Potter that approximately $60 was missing from her home.

3

Detective John Shaver testified that he presented Mary Ann with a photographic lineup that contained Jackson's photograph. Shaver testified that Mary Ann did not identify a suspect, but she focused on Jackson's photograph. At trial, Mary Ann identified Jackson as her attacker.

Tiffani Dusang, a forensic nurse examiner, testified that she found bruises and tears on Mary Ann's body. Dusang opined that Mary Ann's injuries were not likely the result of consensual sex, but that she had been sexually assaulted. Jennifer Pollock, a forensic scientist, testified that Jackson could not be excluded as a contributor of the DNA found on neck swabs and breast swabs, and on sperm cells taken from vaginal swabs. Jessica Ehmann, a forensic scientist, testified that the presence of sperm cells indicates sexual contact.

Jessie McGill, one of Mary Ann's neighbors, testified that, on December 24, 2012, she called 9-1-1 when a man tried to enter her home. The man broke in, grabbed McGill, and dragged her to the bedroom. McGill testified that the man tried to rape her. Paul Flowers, McGill's neighbor, heard noises coming from McGill's side of the duplex. Flowers retrieved his gun and knocked on McGill's door. McGill testified that the man ran away when Flowers knocked on the door. When Officer Steven Deliphose arrived at the scene, Flowers told him that the man

4

went behind McGill's house. Deliphose testified that Jackson was the man he took into custody.

Jackson testified that Mary Ann has a drug problem, Mary Ann gave him $60, and he did not harm or rape Mary Ann and did not break into McGill's home. Jackson testified that he was being "railroaded." He testified that he and Mary Ann had a sexual relationship. He testified that the other witnesses had perjured themselves so as to convict him of a crime he did not commit.

In its charge, the trial court defined "sexual assault" as follows:

A person commits the offense of sexual assault if the person intentionally or knowingly:

(1) causes the penetration of the sexual organ of another person by any means, without that person's consent;

(2) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

(3) causes the sexual organ of another person, without that person's consent, to contact the mouth of another person, including the defendant.

The charging paragraph states, in pertinent part:

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that [Jackson]:

. . . Did then and there intentionally or knowingly cause the sexual organ of defendant to penetrate the mouth of [the victim], without the consent of [the victim].

5

Or, if you find from the evidence beyond a reasonable doubt that [Jackson]:

. . . Did then and there intentionally or knowingly cause the sexual organ of defendant to penetrate the sexual organ of [the victim], without the consent of [the victim].

Or, if you find from the evidence beyond a reasonable doubt that [Jackson]:

. . . Did then and there intentionally or knowingly cause the sexual organ [of the victim], to contact the sexual organ of the Defendant, without the consent of [the victim]; then

You will find the defendant guilty of Sexual Assault, as charged in the indictment.

Jackson did not object to the charge.

During closing, the State argued as follows:

And your jury charge is on page three, and it alleges three different ways . . . sexual assault can take place. He either penetrated her sex organ with his sex organ, penetrated her mouth with his sex organ, or he made contact with her sex organ and his against her will. And that's what you have to decide.

And the law says you don't have to decide which one of these is right. The law says that as long as you find that he violated one, two, or three and everybody is agreeing that one, two, and three in combination, that he violated it, he's guilty of the criminal offense of sexual assault.

It's okay if you don't believe that he penetrated her mouth but you believe that he penetrated her vagina. And it's okay if you don't believe that he penetrated her vagina but you believe he penetrated her mouth. As long as the 12 of you agree that he did violate her sexually, that's all it takes.

Jackson did not object to this argument.

On appeal, Jackson complains that the jury charge improperly: (1) describes an offense for which he was not charged; (2) authorized the jury to determine guilt or innocence upon only one count of sexual assault when Jackson was indicted and tried for two counts of sexual assault; (3) authorized a conviction without a unanimous verdict by authorizing the jury to convict based on proof of any one of three distinct offenses listed in the disjunctive; (4) authorized the jury to convict Jackson of sexual assault (oral sex) upon proof of sexual intercourse or sexual contact; and (5) authorized the jury to convict Jackson of sexual assault (sexual intercourse) upon proof of oral sex. According to Jackson, the jury returned a verdict regarding only one count of the indictment and it is impossible to determine on which count the verdict is based.

Assuming without deciding that the trial court's jury charge was erroneous, we conclude that harm, if any, was not egregious. The jury charge instructed that a unanimous verdict must be reached. In the State's closing argument, outlined above, the State instructed the jury that all twelve jurors must agree on a verdict, whether all twelve believed that Jackson committed sexual assault by penetrating Mary Ann's mouth or whether all twelve believed that Jackson committed sexual assault by penetrating Mary Ann's sexual organ. We do not construe the State's

7

argument as instructing the jurors that they need not be unanimous with regard to the specific type of conduct on which the jury based its verdict. Additionally, the jury heard Mary Ann's testimony that Jackson penetrated both her mouth and her sexual organ. Dusang testified that the bruises and tears found on Mary Ann's body were consistent with sexual assault. DNA and sperm cells of which Jackson could not be excluded as a contributor were found on Mary Ann's body, including her sexual organ, which Ehmann testified is an indicator of sexual contact. Moreover, Jackson was able to present his defensive theories that he and Mary Ann were involved in a consensual sexual relationship and the allegations against him had been fabricated. The jury apparently disbelieved Jackson's defensive theories and, based on the evidence presented at trial, it is unlikely that the jurors would have believed that Jackson penetrated Mary Ann's mouth but did not believe that he penetrated her sexual organ. *See generally Cosio v. State*, 353 S.W.3d 766, 777-78 (Tex. Crim. App. 2011). Based on the record before us, we conclude that Jackson was not denied a fair and impartial trial. *See Sakil*, 287 S.W.3d at 26. We overrule issues one through seven.

## State's Argument at Trial

In issue eight, Jackson maintains that, in its closing argument, the State improperly told the jury that it could convict based on non-unanimous findings.

8

However, because Jackson did not object to the State's argument, issue eight is not preserved for appellate review and is overruled. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) ("To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument.").

Ineffective Assistance

In issue nine, Jackson complains that he received ineffective assistance of counsel at trial because defense counsel failed to object to the jury charge, to the verdict forms, or to the State's jury argument. To establish ineffective assistance, Jackson must satisfy the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of

reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Id*.

The record does not indicate that Jackson filed a motion for new trial to allege ineffective assistance. The record is silent as to trial counsel's tactical and strategic decisionmaking. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Moreover, Jackson cannot demonstrate that, but for counsel's alleged errors, the outcome of his trial would have been different. *See Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd). Nor is trial counsel's ineffectiveness apparent from the record. *See Freeman v. State*, 125 S.W.3d 505, 506-507 (Tex. Crim. App. 2003). Jackson cannot defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. We overrule issue nine and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

10

Submitted on July 15, 2014
Opinion Delivered September 3, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.