In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00209-CR**
_____

**DAVID SCOTT ROSE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 27535 (4 Counts)**

## MEMORANDUM OPINION

A grand jury indicted Appellant David Scott Rose ("Rose," "Appellant," or "Defendant") on four counts of aggravated assault against a public servant— specifically, against four police officers. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B). Rose pleaded "not guilty," but the jury found him guilty as charged and sentenced him to life imprisonment on all four counts. On appeal, Rose has one stated issue,

> The Trial Court err[]ed in failing to suppress the Appellant[']s video tape records of this oral statement. Alleging that the statement was made involuntary and in violation of the 5th and 14th Amendment of the

1

Constitution of the United States and Article 1, Section 10 of the Texas Constitution and Article 38.22 Section 6 and 7, and Article 38.23 of the Texas Code of Criminal Procedures.

But, in the summary of the argument and argument section of his brief, Rose argues that because his attorney filed a motion to suppress where he argued that his statements were not voluntarily made, and the trial court denied the motion to suppress, the trial court erred in failing to give the jury instructions as outlined in Articles 38.22 and 38.23.

Motion to Suppress Hearing

The day before the trial began, the trial court held a hearing on the motion to suppress. At the hearing, Texas Ranger Clendennen testified about his investigation and the interrogation of Rose. Clendennen testified that his interrogation was conducted the day after the shooting, that he gave Rose a *Miranda* warning and article 38.22 warnings. Rose verbally replied that he understood the warning, he did not ask to stop the interview at any time, he did not request an attorney, and he did not refuse to answer any questions. The State also introduced the audio recording of the interrogation at the hearing. Rose's attorney argued that because Rose had been shot three times the day before the interview, he was "not in the physical condition to voluntarily and knowingly consent to giving a statement." The trial court denied the motion to suppress, and in its Trial Court Findings, the court wrote,

The Court finds that the recorded statements of the Defendant were made voluntarily based on the fact that he was read his Miranda

2

warnings and he advised that he understood them, he did not ask to end the interview, and he did not request for an attorney to be present during the interview.

On appeal Rose does not make a specific challenge to the trial court's suppression ruling.

At trial, the State did not introduce into evidence the audio recording of the interrogation. The State did elicit testimony from Clendennen about his investigation and about what Rose told Clendennen. On appeal, Rose contends the trial court erred in failing to include an instruction in the jury charge as required by articles 38.22 and 38.23 of the Code of Criminal Procedure. We overrule Appellant's complaint, and we affirm the trial court's judgment.

Testimony and Evidence at Trial

A dispatcher for the Polk County Sheriff's Office testified that Rose made a 911 call to the police at about midnight on March 3, 2020, Rose was agitated, said there was going to be a shootout, and reported that some deputies were breaking into his home. Rose asked to speak with Detective David Mitchell, dispatch was able to identify Rose's location from the call, and the dispatcher sent deputies to the location. The dispatcher agreed that Rose stated, "there's soon to be a big 'ole fire and a gun battle." Deputy Andy Lowrie also testified that Rose had stated, "There's soon to be a big 'ole fire, a gun battle."

3

William Land, Mark Jones, Andy Lowrie, and Victor White testified at trial, and all four were deputies with the Polk County Sheriff's Office and each was named as a complainant in the indictment.[1] Land testified that when Rose called 911 on the night of March 3, 2020, Rose reported that a narcotics officer was trying to break into his home. Land further testified that the deputies were prepared to execute outstanding warrants for Rose's arrest and a search warrant, and they could hear someone moving inside the home. The deputies testified that, upon arrival at Rose's location, the deputies' vehicles surrounded the home with their lights on, and all the officers at the scene were wearing tactical gear that designated them as law enforcement officers. Detective White testified that Rose was aware that the men surrounding the home were police officers.

Land testified that the officers knocked on the door and announced themselves as sheriff's deputies. Detective Mitchell tried to talk Rose into coming out and surrendering, but Rose did not come out, although Detective Mitchell continued efforts to stay on the phone with Rose. Land and White testified that the deputies were concerned because they believed that Rose was armed, and Mitchell testified that Rose threatened to come out of the house with a gun. At one point the deputies were concerned that Rose may not be alone. Jones and Lowrie testified that the

---

[1] The indictment named a fifth complainant, Austin McCracken, who also testified at trial, but the State elected to abandon the charges against Rose as to complainant McCracken.

deputies spotted an open window, and one of the officers climbed through the window into the home and saw that no one was there except for Rose.

According to Land and Jones, sometime around dawn, Rose fired shots at the deputies. Land and Mitchell stated that the officers planned to throw a flash bang and CS gas into the home, but before they could do so, Rose fired another shot. Three deputies and Clendennen testified that one of the deputies threw a flash bang and CS gas, the flash bang bounced off the house, but the gas went into the house. The deputies testified that Rose broke a small window of the home, pointed a rifle out the window, and fired in the direction of multiple officers.

Two deputies and Clendennen testified that the gas started to affect the officers as well as Rose, who was hanging out of a window trying to get some air. According to Deputies Land and Lowrie, when the deputies went into the house to get Rose, they discovered he was barricaded in a bedroom. Three of the deputies testified that ultimately, the officers got Rose out of the house, they saw that Rose had been shot three or four times, and an ambulance took Rose to the hospital for treatment.

Ranger Clendennen testified at trial that he was asked to assist officers on March 3, 2020, in an officer-involved shooting and barricaded subject. According to Clendennen, when he arrived, the shooting had already occurred. Clendennen explained that Rose had "a long assault rifle" that was a .30-caliber carbine military

5

rifle from World War II that could easily shoot through the walls of Rose's trailer home. Clendennen testified that he was told that Rose had been shot and had been taken to the hospital. Clendennen identified gunshot wounds to Rose in certain photo exhibits that were in evidence. Clendennen also testified that Rose had used a .30-caliber semiautomatic long rifle. According to Clendennen, he interviewed Rose on March 4th, after Rose was released from the hospital. Clendennen testified that he read Rose his *Miranda* rights and that Rose advised him he understood his legal rights. Clendennen described Rose as cooperative, but some of Rose's statements were not consistent with evidence at the scene, although Clendennen thought that other statements Rose made corroborated what Clendennen knew to be true. Clendennen testified that Rose admitted he fired a weapon, but Rose told Clendennen he fired only after he was fired upon by the deputies.

An audio recording of Rose's 911 call was admitted into evidence, in which Rose states, "there's going to be a big gun battle[.]" Video recordings from the bodycams of Deputies Land, Jones, and White at Rose's house during the incident were also admitted into evidence and published to the jury.

Analysis

According to Appellant, the trial court erred by failing to include a jury instruction under Articles 38.22 and 38.23 of the Code of Criminal Procedure. Appellant argues that the evidence of the timing of the interrogation by Clendennen,

the setting of the interrogation, and the wounds that had been inflicted on the Appellant was before the jury and pursuant to Articles 38.22 and 38.23, the court should have given a jury instruction about what the jury could consider as to whether his statement to law enforcement was voluntarily made. Rose does not challenge whether he was given his Article 38.22 (*Miranda*) warnings, and he does not contend that the State failed to follow the procedures outlined for recording such statements. Rose's only complaint on appeal is that the trial court erred in failing to include a jury instruction that informed the jury it could consider whether Rose's statement to Clendennen was voluntarily made.

In this case, Ranger Clendennen testified that he made an audio recording of his interview with Rose. Texas Code of Criminal Procedure Article 38.22, section 3, requires that to be admitted into evidence, custodial statements of a defendant taken by an officer must be recorded. Tex. Code Crim. Proc. Ann. art. 38.22, § 3. Under section 6 of Article 38.22, when a question is raised as to the voluntariness of a statement of an accused, the trial court must make an independent finding as to whether the statement was made under voluntary conditions. In this case, the trial court found that Rose's statement was voluntary. Section 38.22 provides in part:

> Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

*Id.* art. 38.22, § 6. Article 38.23 provides in relevant part:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* art. 38.23(a) (titled "Evidence Not to Be Used."); *see also Wheeler v. State*, 616 S.W.3d 858, 863 (Tex. Crim. App. 2021) ("Under the Texas Exclusionary Rule, evidence obtained in violation of any provision of state or federal law cannot be used at trial in a criminal prosecution.").

Before Clendennen testified at trial, defense counsel requested a running objection for the "reasons I stated in my motion to suppress[]" as to the admission of Rose's statements to law enforcement, which the trial court granted. Clendennen testified that he gave Rose his *Miranda* warnings before he started the interview, that he interviewed Rose after Rose was released from the hospital, that Rose stated that he had fired his weapon after the Sheriff's Office fired upon him, and that Rose made some statements that were not consistent with evidence at the scene and other statements that corroborated what Clendennen already knew to be true. The State did not introduce the recorded statement during the trial, and it was not admitted into evidence.[2] Later, when Clendennen was testifying about where Rose may have been

---

[2] The recorded statement is part of our appellate record, as it was an exhibit during the hearing on the motion to suppress.

positioned during the event, defense counsel stated, "now this is based on hearsay. I object. He can talk about the interviews he conducted, the evidence." Defense counsel then also stated, "I have no objection -- excuse me. I have no objection to him testifying."

On appeal, the Defendant's argument is that the trial court failed to include instructions as required by 38.22 and 38.23. He admits in his brief that he failed to object to the charge during the trial, and he admits he never requested the instruction. Appellant does not argue on appeal that the alleged error had a substantial or injurious effect on the jury's verdict, nor does he claim he suffered "egregious harm." *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3, 38.23; Tex. R. App. P. 38.1(i), 44.2(b). Ordinarily, compliance with article 38.22 is a statutory claim and it is not a constitutional challenge. *Nonn v. State*, 117 S.W.3d 874, 879-80 (Tex. Crim. App. 2003) (explaining that compliance with article 38.22 is not a constitutional issue); *Porter v. State*, No. 09-19-00376-CR, 2022 Tex. App. LEXIS 4201, at **17-18 (Tex. App.—Beaumont June 22, 2022, no pet.) (mem. op., not designated for publication) (explaining that compliance with article 38.22 is a procedural matter and not of constitutional dimension). When only a statutory violation is claimed, we treat the alleged error as non-constitutional for the purpose of conducting a harm analysis, and the error will be reversible only if it affected a substantial right of the defendant—that is, if the error had a substantial or injurious effect on the jury's

verdict. *See Sandoval v. State*, No. AP-77,081, 2022 Tex. Crim. App. LEXIS 844, at \*\*22-23 (Tex. Crim. App. Dec. 7, 2022); *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017) (citing Tex. R. App. P. 44.2(b)); *Nonn*, 177 S.W.3d at 880.

In his brief on appeal, Rose states,

> The record is clear that the Appellant had been shot three times no more than 24 hours before he had been interrogated by the law enforcement and he had just been released from the hospital prior to this interrogation. The timing of the interrogation, the setting of the interrogation, the wounds that had been inflicted on the Appellant were admitted into evidence and should have been presented to the Jury in question form and set forth in Article 38.23.

Rose did not object to the jury charge at trial, and Rose did not submit a requested jury instruction on the issue.

On appeal, Rose does not argue that the trial court failed to comply with any of the procedural requirements of Article 38.22, and he does not allege that he did not receive a fair and impartial trial.

Instead, Rose states in his brief on appeal that "[a] review of the record made at the Motion to Suppress Statement [] shows that the argument concerning the admissibility, or the inadmissibility of the Appellant's statement[,] concern[ed] the waiver of his rights under Article 38.22 and 38.23." He goes on to argue that he was entitled to a jury instruction because "[t]hese are statutory mandated instructions, and the Trial Judge must include them in the Jury instructions when the voluntariness of the Appellant's statement is at issue," citing *Oursbourn v. State*, 259 S.W.3d 159,

10

182 (Tex. Crim. App. 2008) and *Pickens v. State*, 165 S.W.3d 675 (Tex. Crim. App. 2005).

In *Oursbourn*, there was evidence at trial that the defendant was in pain, that the investigators lied to him about the evidence against him, and the defendant displayed a certain vulnerable mental state due to having bipolar disorder. *Id*. at 181. The Court of Criminal Appeals concluded that the evidence raised only a general voluntariness question under section 6 of Article 38.22 and not a constitutional due-process claim, and that the defendant's claim was a statutory claim that focused on his subjective mental state. *See id.* The Court explained,

> . . . Due process and *Miranda* claims may warrant both "general" and "specific" voluntariness instructions; Texas statutory claims warrant only a "general" voluntariness instruction. It is the defendant's responsibility to delineate which type of "involuntariness" he is claiming—a general (perhaps subjective) lack of voluntariness or a specific police-coerced lack of voluntariness—because the jury instruction is very different depending upon the type of claim.
>
> Obviously, the evidence must raise a "voluntariness" issue, and the defendant should request a jury instruction that relates to his theory of involuntariness. But if the defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for "egregious harm" under *Almanza*.

*Id.* at 174 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)); *see also Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) ("Because appellant never presented a proposed jury instruction that asked the jury to decide disputed facts, any potential error in the charge should be reviewed only for

11

'egregious harm' under *Almanza*."). Here, as in *Oursbourn*, we conclude that Rose's complaint on appeal raises a statutory complaint and not a constitutional challenge.

We review a claim of charge error through a two-step process: first determining whether error exists and then conducting a harm analysis if error is found to exist. *Rogers v. State*, No. PD-0242-19, 2022 Tex. Crim. App. LEXIS 742, at *7 (Tex. Crim. App. Oct. 26, 2022) (citing *Phillips v. State*, 463 S.W.3d 59, 64-65 (Tex. Crim. App. 2015)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Initially we must determine whether error occurred. *See Ngo*, 175 S.W.3d at 743. We defer to the trial court's ruling on questions of fact and questions that turn on credibility and demeanor, and application-of-law-to-fact questions that do not turn on credibility and demeanor are reviewed under a de novo standard. *See Sandoval*, 2022 Tex. Crim. App. LEXIS 844, at *22. If we find error, then we analyze the error for harm. *See id.* When, as here, the defendant did not object at trial and failed to preserve error for appeal, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *See Ngo*, 175 S.W.3d at 743-44; *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza*, 686 S.W.2d at 171.

Did the trial court err in failing to include an instruction to the Jury?

The State argues the facts were not disputed at trial and that the defendant did not present evidence showing the circumstances surrounding the statement he made

to Ranger Clendennen, and the State emphasizes that the State did not offer or use the recorded statement at trial. That said, we note that the defense renewed its objections from the motion to suppress, and the trial court allowed the defense attorney a "running objection" during the testimony of Ranger Clendennen.

To determine whether the trial court erred, we use section 6 of Article 38.22, as explained by the Court of Criminal Appeals:

> (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction.

*Oursbourn*, 259 S.W.3d at 175 (footnote omitted).

Rose notified the trial judge that there is an issue of voluntariness in his written motion to suppress, and at the hearing on the motion, defense counsel stated that "[s]omebody, having been shot three times [] not a great deal more than 24 hours earlier, is not in the physical condition to voluntarily and knowingly consent to giving a statement." The trial court held a hearing outside the presence of the jury. Therefore, we conclude that steps one and two as outlined above are satisfied.

13

After the hearing on the motion to suppress, the trial court entered an order denying the motion. In its Trial Court Findings, the court found that Rose's recorded statement was made voluntarily. So, step three was satisfied.

The next step in the analysis provides that, once the defendant's statement is found to be voluntary, "it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary[.]" *See id.* In this case, the State never offered Rose's recorded statement into evidence and it was not admitted into evidence. However, Ranger Clendennen testified about his interview of Rose and about what Rose told him during the interview:

- "I interviewed him midday on the -- March 4th when he had been released from the hospital, at the Polk County Sheriff's Office."
- "Due to him being in custody, while I was speaking to him, I Mirandized him, and he advised me he understood his legal rights."
- "Mr. Rose, upon being read his legal Miranda warning, he remembered being at the trailer. I believe that there [were] a lot of statements that he made that weren't consistent with some of the evidence at the scene."
- "The statements that he was making to me did corroborate what I [] already knew to be true."
- "Mr. Rose admitted that he did fire the weapon, but it was after the Polk County Sheriff's Office had fired upon him."
- "I would say the knowledge that I had when I interviewed him from the 911 call and different statements that he made, there were several conflicting statements he was making to me in the interview that didn't add up to the scene."

On cross-examination of Clendennen, the following exchange occurred:

[Defense counsel]: And you interviewed Mr. Rose at the sheriff's office?

14

[Clendennen]: Yes, sir.

[Defense counsel]: And that was the day after -- after the shooting?

[Clendennen]:  Yes, sir.

Under Article 38.22, "the defense is [] required to introduce evidence at trial from which a reasonable jury could conclude that the statement was not voluntary[]," and "[s]ome evidence must have been presented to the jury that the defendant's confession was not given voluntarily." *See Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). The State argues that there was no evidence before the jury that Rose's statement was not voluntary. We agree. There was no evidence presented by Rose to the jury that Rose was on medication, no evidence of Rose's mental state, no evidence of coercion, and no evidence of mental distress or mental infirmity. *See Oursbourn*, 259 S.W.3d at 181 (evidence that the defendant had been lied to about the evidence against him, that he was in pain, and that he was in a vulnerable mental state due to his bipolar disorder was sufficient to raise the issue of voluntariness). While it is true that Clendennen testified that he interviewed Rose the day after the shooting and after Rose had been discharged from the hospital, the defense offered no evidence of Rose's mental state or his physical condition, no evidence of whether he was under the influence of medication, and no evidence relevant to whether his decision to give a statement to law enforcement was knowing, voluntary, and intelligent.

15

"Under article 38.22, there is no error in refusing to include a jury instruction where there is no evidence before the jury to raise the issue." *Vasquez*, 225 S.W.3d at 545. Therefore, we find no error by the trial court in not giving a jury instruction on voluntariness. *See id*; *see also Oursbourn*, 259 S.W.3d at 174 (to warrant a jury instruction under Article 38.22, § 6, "the evidence must raise a 'voluntariness' issue").[3]

Appellant also alleges the trial court erred by not giving a jury instruction under Article 38.23. According to Appellant, "Article 38.23 is the law applicable to any case, [in] which a specific, disputed issue [of] fact is raised concerning the Constitutional voluntariness of the making of the Appellant's statement." Under Article 38.23, when evidence is admitted that creates a question regarding whether evidence was illegally obtained, "'the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions

---

[3] *See also Roubert v. State*, No. 08-20-00165-CR, 2022 Tex. App. LEXIS 3970, at **17-19 (Tex. App.—El Paso June 10, 2022, no pet.) (not designated for publication) (no error not to give a jury instruction on voluntariness where the evidence did not raise the issue); *Abdullah v. State*, No. 14-21-00306-CR, 2022 Tex. App. LEXIS 3536, at *13 (Tex. App.—Houston [14th Dist.] May 26, 2022, pet. ref'd) (mem. op., not designated for publication) (same); *Munoz v. State*, No. 08-19-00072-CR, 2020 Tex. App. LEXIS 8545, at *17 (Tex. App.—El Paso Oct. 30, 2020, pet. ref'd) (not designated for publication) (same); *San Juan v. State*, No. 06-19-00174-CR, 2020 Tex. App. LEXIS 3105, at **26-27 (Tex. App.—Texarkana Apr. 15, 2020, pet. ref'd) (mem. op., not designated for publication) (same); *Cabrera v. State*, No. 05-17-00318-CR, 2018 Tex. App. LEXIS 5833, at *10 (Tex. App.—Dallas July 27, 2018, pet. ref'd) (mem. op., not designated for publication) (same).

of this [a]rticle, then and in such event, the jury shall disregard any such evidence so obtained.'" *White v. State*, 632 S.W.3d 232, 237 (Tex. App.—Beaumont 2021, no pet.) (quoting *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012)); *see also* Tex. Code Crim. Proc. Ann. art. 38.23(a).

To be entitled to an Article 38.23(a) instruction, the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *See Madden*, 242 S.W.3d at 510. Appellant's brief fails to identify the evidence presented at trial that created a "specific, disputed" fact issue about the voluntariness of his statement. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to cite to legal authority and to the record). As we have previously concluded, there was no evidence before the jury that created a fact question whether Appellant's statement was involuntary or illegally obtained. Therefore, the trial court did not err by not giving a jury instruction under Article 38.23. *See id.*

Was there "egregious harm?"

Even if we assumed the trial court erred in failing to give an instruction under Article 38.22 or 38.23, we would still have to examine whether Rose suffered "egregious harm." *See Oursbourn*, 259 S.W.3d at 182 (citing *Almanza*, 686 S.W.2d at 171) ("[I]f no proper objection was made at trial and the accused must claim that

the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'-- in short 'egregious harm.'").

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)); *Garcia v. State*, 578 S.W.3d 106, 129 (Tex. App.—Beaumont 2019, pet. ref'd). "Egregious harm" is present when the case for conviction was actually made clearly and significantly more persuasive by the error. *See Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); *Graves v. State*, 310 S.W.3d 924, 930 (Tex. App.—Beaumont 2010, pet. ref'd) (citing *Bluitt*, 137 S.W.3d at 53; *Hutch*, 922 S.W.2d at 171; *Saunders*, 817 S.W.2d at 692).

When conducting an egregious-harm review, we consider the entire jury charge, all the evidence presented at trial, including the contested issues and the weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *See Stuhler*, 218 S.W.3d at 719. We place no burden of proof or persuasion to show egregious harm on either the defendant or the State. *See Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008). Before we can find egregious harm, the record must show that the

18

defendant has suffered actual, rather than merely theoretical, harm from the jury-charge error. *See Almanza*, 686 S.W.2d at 174. When assessing harm arising from alleged jury charge error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 171. We also consider the impact, if any, of the alleged omission in the jury charge. *See Tucker v. State*, 456 S.W.3d 194, 212 (Tex. App.—San Antonio 2014, pet. ref'd) (citing *Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002)); *Graves*, 310 S.W.3d at 930 (same).

The jury charge in this case asked the jurors for a verdict on the four counts of aggravated assault against a public officer, against Deputies Andy Lowrie, Mark Jones, Victor White, and William Land, as alleged in the indictment. The language of the jury charge tracked the language of the statute under which Rose was indicted.[4]

---

[4] Section 22.02 of the Penal Code provides that an individual commits aggravated assault if he commits assault as defined under section 22.01—a threat of imminent bodily injury—and "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). Aggravated assault, normally a second-degree felony, may be elevated to a first-degree felony if the individual commits the aggravated assault against "a person [he] knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account" of a public servant's "exercise of official power or performance of an official duty[.]" *Id.* § 22.02(b)(1), (2)(B).

The defense raised only one objection to the jury charge: that the charge did not include a definition of "imminent[]" and asked that one be included. The trial court denied the request. Appellant does not complain about that ruling on appeal. Considering the charge as a whole, it weighs against a finding of egregious harm.

Clendennen's recorded interview of Rose was not admitted into evidence at trial. Clendennen testified (1) that he investigated the incident, that the shooting had already occurred when he arrived at the scene, and that Rose had used "a long assault rifle" that was a .30-caliber carbine military rifle, (2) that when he interviewed Rose after the incident, he gave Rose his *Miranda* warnings, (3) that he interviewed Rose and Rose's father the day Rose was released from the hospital, (4) that he believed "there [were] a lot of statements that [Rose] made that weren't consistent with some of the evidence at the scene[,]" (5) that some of what Rose told Clendennen corroborated what Clendennen already knew to be true, and (6) that "Mr. Rose admitted that he did fire the weapon, but it was after the Polk County Sheriff's Office had fired upon him." The 911 dispatcher testified that Rose told her on the 911 call, "there's soon to be a big 'ole fire and a gun battle," and the recorded 911 call was admitted into evidence. Rose did not object to the admission of the 911 call or the testimony from the dispatcher. Deputy Lowrie testified that on the night of the incident, Rose said, "[t]here's soon to be a big 'ole fire, a gun battle." Deputies Lowrie and White also testified that Detective Mitchell unsuccessfully tried to talk

Rose into coming out of the home and surrendering. Detective Mitchell testified that he stayed on the phone with Rose during the incident, he believed that Rose's behavior was erratic, he believed Rose was armed, and he believed Rose became more dangerous throughout the night and that Rose told him he was going to be coming outside with a gun. According to Mitchell, Rose gave a 3-2-1 countdown, and "when he got to one, that's when the -- the first gunshot went off." Land, Jones, Lowrie, and White all testified that Rose pointed a rifle out of a window and fired in the direction of the officers. Recordings made from Deputy Land's, Jones's, and White's body cameras were admitted into evidence and published to the jury, and the recordings were consistent with the testimony provided by the Deputies. Considering all the evidence presented at trial, it weighs against a finding of egregious harm.

Neither the State nor the defense mentioned Clendennen's interview of Rose during closing arguments. The State placed no emphasis in closing on any part of Rose's statement which was made to Ranger Clendennen. So, this also weighs against a finding of egregious harm.

As to other relevant information in the record, including the testimony from the witnesses, the 911 audio recording, and the officers' camera footage, we find that evidence also weighs against a finding of egregious harm. As we have noted, Clendennen's recorded interview of Rose was not introduced into evidence.

21

Clendennen testified that some of Rose's statements corroborated evidence from the scene, and some statements did not. Clendennen also testified that "Mr. Rose admitted that he did fire the weapon, but it was after the Polk County Sheriff's Office had fired upon him," and that statement was potentially incriminating but also could have been favorable to the defense. We note that later in Clendennen's testimony the defense attorney agreed that Clendennen "can talk about the interviews he conducted, the evidence." So, this information also weighs against a finding of egregious harm.

After analyzing the evidence under the *Almanza* factors, we conclude that the case for conviction was not made "clearly and significantly" more persuasive by the failure to include a jury instruction on the voluntariness of Rose's statement to law enforcement. *See Casanova*, 383 S.W.3d at 533. We cannot say that the omission of the instruction went to the very basis of the case, or that it deprived the defendant of a valuable right, or that it vitally affected a defensive theory. We conclude that Rose did not suffer "egregious harm" due to the omission of the instruction. *See id.*; *Graves*, 310 S.W.3d at 930. And, we cannot say that the omission in the charge had a substantial or injurious effect on the jury's verdict. *See Proenza*, 541 S.W.3d at 801.

We overrule Appellant's issue on appeal, and we affirm the trial court's judgment.

22

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 11, 2022
Opinion Delivered February 1, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.