**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00343-CR**
_____

**AARON WAYNE COTTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. F20-34613

**MEMORANDUM OPINION**

Appellant Aaron Wayne Cotton challenges his conviction for indecency with a child by exposure, a third-degree felony. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A), (d). In four issues, Cotton complains about the sufficiency of the evidence, ineffective assistance of counsel, and the admission of extraneous offense evidence. For the reasons explained below, we affirm the trial court's judgment.

1

# BACKGROUND

A grand jury indicted Cotton for the offense of indecency with a child by exposure, a third-degree felony. *See id.* The indictment alleged that Cotton "did then and there with the intent to arouse or gratify the sexual desire of any person and knowing [U.G.],[1] hereafter styled the Complainant, was present[,] expose[d] his genitals to the Complainant, a child younger than seventeen years of age and not the spouse of the Defendant[.]" The indictment also alleged that Cotton had two prior felony convictions, increasing his punishment range for a habitual offender to 25 to 99 years of confinement or life. *See id.* § 12.42(d).

The trial court conducted a jury trial. Michael Trahan, the assistant store director of Cash Saver, testified that he provided the police with video footage from his surveillance equipment. This footage shows a car parking next to a Suburban in the parking lot. Trahan explained that the video shows that when people ran to the parking lot, the car left.

Sara, U.G.'s mother, testified that U.G. was thirteen years old and sitting alone in their Suburban at Cash Saver when the May 11, 2020 incident occurred. Sara

---

[1] We refer to the crime victim by her initials and to her family members by a pseudonym to protect their privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's identity and privacy throughout the criminal justice process").

explained that when she and her husband, Mark, were inside the store, they received an emergency phone call from U.G., who asked Mark to hurry outside. Sara testified that Mark heard urgency in U.G.'s voice and ran outside, and U.G. told them what had happened.

While Sara did not see the car in the parking lot that day, Sara reviewed the Cash Saver video and recognized the car that parked next to their Suburban as the car that followed them home from the store after the incident. Sara called the police after U.G. noticed the car had followed them, and she described the car to the police as being a gray Mercury car with a black passenger door. Sara's 911 call was played to the jury, and during her call, Sara reported that while they were at Cash Saver, U.G. saw a man in a car playing with his penis and that the man followed them home.

Chancellor Van Houten of the Beaumont Police Department testified that he was dispatched to Cash Saver on May 11, 2020 to investigate a suspicious person exposing their genitals and masturbating in the parking lot. Van Houten was advised that the Mercury vehicle involved was two-toned with the driver door and front quarter panel being dark colored. Van Houten testified that he assisted Officer Brandon Rodriguez, who stopped the vehicle and identified Cotton as the suspect. Van Houten explained that Cotton was ticketed and allowed to leave because he believed Cotton had committed the misdemeanor offense of indecent exposure. After talking with U.G. and her parents, Van Houten determined the offense was a

3

felony due to U.G.'s age. Van Houten collected the Cash Saver video, which showed the Mercury vehicle Cotton was driving pull up beside the Suburban U.G. occupied. Van Houten testified that evidence showing Cotton was masturbating in his vehicle sufficiently demonstrates his intent to arouse or gratify his sexual desires or another person's.

At one point, Van Houten testified that Cotton's arm was in a cast because he broke it when he ran from police, leading the trial court to conduct a hearing outside the jury's presence. During the hearing, Van Houten explained that on April 5, 2020, just one month before the current offense, he investigated another case in U.G.'s neighborhood. In that case, Cotton committed indecent exposure by masturbating in public. Cotton then ran from the complainant, hopped a fence, and broke his arm. Van Houten testified that when he found Cotton on the ground after he broke his arm, Cotton admitted to exposing his penis but claimed he was urinating. Van Houten explained that based on his observations at the scene, Cotton appeared to be lying. Van Houten testified that he has investigated other complaints of indecent exposure and indecency with children where Cotton was identified as the suspect, and in his experience, Cotton often runs from the scene as he did in the current offense.

Cotton's counsel objected to the admission of allegations of prior bad acts because they are more prejudicial than probative. The trial court explained that it

would admit the April 5th incident for the limited purpose of identity because it was close in time, occurred in a similar location, included relevant factors like those surrounding the current offense, and Van Houten's testimony about Cotton's statement was sufficient. The trial court found that since Cotton was challenging whether he was the person U.G. saw exposing his genitals, the April 5th incident was admissible under Rule 404(b) of the Texas Rules of Evidence for the limited purpose of proving his identity. The trial court found that the inherent probative value of the evidence is not substantially outweighed by unfair prejudice and is relevant to a fact of consequence in the case. The trial court stated it would only consider other incidents if the State could prove beyond a reasonable doubt that Cotton committed the acts.

Van Houten testified about the April 5th incident, explaining that he was dispatched to a location on U.G.'s street where citizens had chased Cotton, who was masturbating and exposing his genitals in a field across the street from the complainant. Van Houten testified that he found Cotton on the ground with a broken left arm, and Cotton admitted he had his pants down and was holding and shaking his penis but he claimed he was urinating. At defense counsel's request, the trial court instructed the jury that it could only consider the April 5th incident for the limited purpose of proving identity and only if it was proven beyond a reasonable doubt.

Mark, U.G.'s father, testified that U.G. was thirteen when the Cash Saver incident occurred. Mark testified that U.G. was alone in their Suburban in the parking lot when she called and asked him to come to the parking lot and check on her. Mark explained that U.G. sounded scared, and when he got close to the Suburban, the car parked next to it left. Mark testified that U.G. was hysterical and told them what happened, and as they were driving home, they saw the same car following them. They called the police.

U.G. testified she was thirteen years old when the Cash Saver incident occurred. U.G. explained she was alone in their Suburban with her window midway down when a man, whom she identified as Cotton, parked his vehicle beside her and sat in his car. U.G. testified that she could see Cotton "masturbating in his front seat[] but staring me dead in the eyes[.]" U.G. explained Cotton was sitting on the console with his leg over the passenger's seat with his shorts halfway down, and his genitals were exposed while he masturbated for what "felt like a long time." U.G. explained that Cotton pointed his body toward her so she could see him directly. U.G. testified Cotton did not stop when she saw him, and she was shocked when she called Mark, who ran outside. Cotton left when he saw Mark, and U.G. remembered Cotton's car, which was a Mercury, because the doors and bumper were different colors. U.G. testified that when they got home, Cotton pulled up in front of their house, and they followed him but could not get his license plate number. U.G. also testified she went

6

to the Garth House and that she would be surprised if she had reported Cotton was wearing pants when the incident occurred. U.G. agreed that she only saw Cotton's inner and upper thighs.

After U.G.'s testimony, the trial court conducted a second hearing outside the jury's presence regarding the admission of extraneous offense evidence. The State argued the video evidence showing Cotton masturbating at an apartment complex near U.G.'s house on two prior occasions was admissible under Article 38.37 of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence for identity purposes. Defense counsel argued the evidence should not be admitted unless it was adequate to support a finding by the jury that Cotton committed the extraneous offenses beyond a reasonable doubt.

In determining the admissibility of the extraneous offenses, the trial court reviewed the videos of the March 30 and May 3 incidents. Concerning the May 3rd incident, the video allegedly shows Cotton driving a truck into the parking lot of the apartment complex, exiting the truck, and masturbating in front of children with a cast on his left arm. The trial court found the May 3rd incident was admissible under Rule 404(b) for identity purposes due to several common denominators between the prior incidents and current offense. Concerning the March 30th incident, which allegedly shows Cotton driving the same car involved in the Cash Saver incident into the parking lot of the same apartment complex as the May 3rd incident, and the

7

trial court found that it was admissible only for the purpose of connecting Cotton to the car. The trial court excluded the masturbation portions in the video of the March 30th incident, which did not involve children, explaining the State had enough and it was just bolstering.

Stephen Clagett with Watchtower Security testified before the jury and explained that his company provides fully managed video surveillance to apartment complexes. Clagett explained he provided the videos and still shots of the May 3rd and March 30th incidents.

Officer Brandon Rodriguez responded to the Cash Saver incident involving a suspicious person masturbating in a green or gray Mercury with a black door. Rodriguez located the suspect and the Mercury at an apartment complex where the 911 caller reported seeing the suspect. Rodriguez stopped the vehicle and identified Cotton as the driver and sole occupant. Rodriguez explained that when he found Cotton, Cotton's pants were pulled down with his buttocks exposed, and he was sweating a lot. Rodriguez testified that it appeared as though Cotton was pulling his pants up. Rodriguez's body camera footage of the stop was played for the jury, and the video shows Cotton's left arm was in a cast. Rodriguez explained Van Houten was the lead officer assigned to the case, and Rodriguez's only involvement was issuing Cotton some traffic citations.

Rodriguez explained that he viewed a still shot from the video of the May 3rd incident at the apartment complex, which is close to where he stopped Cotton for the current offense. After viewing the video of the May 3rd incident, Rodriguez testified that the man exposing himself in the video has a cast on his left arm and the same facial and body characteristics as Cotton. Rodriguez explained the individual in the video has a goatee that is consistent with how he observed Cotton during the traffic stop, which was eight days after the May 3rd incident. According to Rodriguez, Cotton looked just like the man in the video. At that point, the trial court instructed the jury that it could only consider the May 3rd incident for identity purposes–an issue in the case–if they found beyond a reasonable doubt that Cotton committed the May 3rd incident.

Rodriguez also viewed the video of the March 30th incident. Rodriguez explained the video shows the car Cotton was driving during the current offense, and he recognized the man in the video and in the still photo as Cotton. Rodriguez testified Cotton did not have a broken arm on March 30th.

Detective Jeffrey Busby testified that he responded to a call involving the current offense and was present when Rodriguez stopped Cotton. Busby explained he recognized Cotton from the April 5th incident, where he responded to a call about people chasing a suspect masturbating in a field, and Busby saw Cotton flee, jump a fence, and break his left arm. Busby testified that during the April 5th incident, which

9

occurred in the same proximity as the current offense, Cotton's pants were hanging mid-thigh level when he jumped the fence and broke his left arm, which required a cast that Cotton still had during the current offense. Busby also explained that the vehicle Cotton was driving during the current offense was distinct because it was two-tone with a black door.

Busby testified that the still photo from the March 30th incident appears to be Cotton, and he explained he would not be surprised that Cotton did not have a cast during that incident because he was not injured yet. Busby viewed the video of the May 3rd incident showing a man exposing himself, and he testified that the man, who has a cast on his left arm, looks like Cotton and has matching facial features and characteristics.

Officer Jacob Leslie was present during the April 5th incident when Cotton broke his arm. Leslie testified he also responded to the May 3rd incident and spoke with an eleven-year-old girl and her mother. After reviewing the video of that incident, Leslie testified that the man in the video with a cast appears to be Cotton, but Leslie could not say for sure it was Cotton.

Officer Daniel Norsworthy testified he investigated the current offense, and he explained the vehicle involved was unique because of the side panels. Norsworthy explained that U.G. was interviewed at the Garth House, and he reviewed the information U.G. provided, the videos from the March 30th and May 3rd incidents,

10

the still photo of Cotton and the vehicle he used during the March 30th incident, and the details of the April 5th incident when Cotton broke his arm. Norsworthy testified there are multiple reference points linking Cotton to the prior incidents and the current offense, including the video footage and pictures, vehicle, same location, same "MO," distinct mannerisms, and the timing of when Cotton got the cast on his arm.

Defense counsel presented Preston Addison Jr., who is familiar with Cotton. Addison viewed a picture of the vehicle Sara identified as being involved in the current offense and testified it is a "dope friend rental." Addison explained that you can borrow the vehicle for a few hours by trading drugs. Addison testified he had seen numerous people in that vehicle.

The jury found Cotton guilty of the offense of indecency with a child by exposure. The trial court conducted a punishment hearing before the jury during which Cotton pleaded "true" to the two prior felony convictions alleged in the indictment. The jury assessed Cotton's punishment as a habitual felony offender at thirty-five years of confinement.

**ANALYSIS**

*Sufficiency of the Evidence*

In issue one, Cotton argues there was insufficient evidence to support his conviction because he and U.G. were in separate vehicles and there was no testimony that he knew anyone was watching him.

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and it may believe all, some, or none of the testimony presented by the parties. *See Metcalf v. State*, 597 S.W.3d 847, 865 (Tex. Crim. App. 2020) (citing *Febus v. State*,

542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995)). The appellate court does not reweigh the evidence or determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We treat direct and circumstantial evidence equally and consider the "'combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd).

For the offense of indecency with a child by exposure, the State needed to prove beyond a reasonable doubt that Cotton, "with intent to arouse or gratify the

sexual desire of any person[,]" exposed any part of his genitals knowing a child younger than 17 years old was present. Tex. Penal Code Ann. § 21.11(a)(2)(A). U.G. testified that she was thirteen years old when Cotton parked beside her family's Suburban in the Cash Saver parking lot, positioned himself on the console so as to be seen by U.G., exposed his genitals, and masturbated in the front seat of his car while staring at her "dead in the eyes[.]" U.G.'s testimony alone was sufficient to support a conviction for indecency with a child by exposure. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense of indecency with a child by exposure beyond a reasonable doubt. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A); Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Metcalf*, 597 S.W.3d at 865; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258. We overrule issue one.

*Ineffective Assistance of Counsel*

In issue two, Cotton complains his counsel was ineffective for failing to request a jury instruction for an affirmative defense because he did not use duress, force, or threats against U.G. *See* Tex. Penal Code Ann. § 21.11(b)(2).

To establish that he received ineffective assistance of counsel, Cotton must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

The right of effective assistance of counsel ensures the right to reasonably effective assistance and does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012). Before we denounce trial

counsel's actions as ineffective, counsel should normally be given an opportunity to explain the challenged actions. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When counsel has not been given an opportunity to explain the challenged actions, we will find deficient performance only when the conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.*

The record does not show that Cotton filed a motion for new trial alleging ineffective assistance. The record is silent as to trial counsel's tactical and strategic decision making. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Moreover, Cotton cannot demonstrate that, but for counsel's alleged errors, the outcome of his trial would have been different. *See Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd). Nor is trial counsel's ineffectiveness apparent from the record. *See Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003). Cotton cannot defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. Since we lack any basis in the record before us to conclude that the alleged failure of Cotton's trial counsel to request the jury instruction was "so outrageous that no competent attorney would have engaged in it[,]" we overrule Cotton's second issue. *Goodspeed*, 187 S.W.3d at 392.

16

*Extraneous Offense Evidence*

In issues three and four, Cotton complains the trial court erred by admitting extraneous offense evidence under Article 38.37 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim Proc. Ann. art. 38.37. In issue three, Cotton argues the videos of the March 30 and May 3 incidents from the apartment complex were irrelevant and more prejudicial than probative. *See* Tex. R. Evid. 403. In issue four, Cotton argues Van Houten's testimony concerning the April 5th incident for the purpose of identity was more prejudicial than probative and denied him a fair trial. *See* Tex. R. Evid. 403, 404(b).

The record shows the trial court admitted all three extraneous offenses under Rule 404(b) and not Article 38.37. We review a trial court's decision to admit or exclude evidence for an abuse of discretion and must uphold the trial court's ruling if it was "within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). This includes our review of a trial court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *See Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Guevara v. State*, 667 S.W.3d 422, 439 (Tex. App.—Beaumont 2023, pet. ref'd). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.

17

*Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We uphold the trial court's decision if correct on any theory of law applicable to the case even if the trial court states the wrong reason for the correct ruling. *De La Paz*, 279 S.W.3d at 344; *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Tex. R. Evid. 401. Rule 404(b) of the Texas Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). Rule 404(b)(2), however, provides for certain permitted uses of extraneous offense evidence. *See* Tex. R. Evid. 404(b)(2). Under the rule, such evidence is admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* "[E]xtraneous-offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). "Thus, a party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Id.*

18

Rule 403 permits a trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. When conducting a Rule 403 analysis, a trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *see also Hall v. State*, 663 S.W.3d 15, 32 (Tex. Crim. App. 2021). Rule 403 favors admitting relevant evidence and "carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (citation omitted).

The record shows that during his opening statement, Cotton raised the issue of identity, arguing this was a "simple case of misidentification." In determining that the videos from the March 30th and May 3rd incidents were for identity purposes under Rule 404(b), the trial court considered the common denominators linking

those incidents with the current offense, including the same time period, same masturbation-type event, similar location, identifying characteristics of the perpetrator, arm cast or no cast, the vehicle, and flight after the offense. Based on this record, we conclude the trial court did not abuse its discretion by finding the videos of the March 30th and May 3rd incidents were admissible under Rule 404(b) for identity purposes.

While Cotton also complains the trial court erred by admitting the videos because they were more prejudicial than probative, the record shows he did not lodge a Rule 403 objection prior to the trial court admitting the videos. *See* Tex. R. Evid. 403. Thus, he has not preserved this argument for our review. *See* Tex. R. App. P. 33.1(a) (stating that to preserve error, the record must show a specific and timely complaint was made to the trial judge and that the trial judge ruled on the complaint). Even if Cotton could show the complaint was preserved for our review, we conclude the trial court's decision was "within the zone of reasonable disagreement." *See* *Wells*, 611 S.W.3d at 427; *Montgomery*, 810 S.W.2d at 391. We overrule issue three.

Cotton also complains that the admission of Van Houten's testimony concerning the April 5th incident for identity purposes was more prejudicial than probative and denied him a fair trial. *See* Tex. R. Evid. 403, 404(b). The record shows the trial court admitted the testimony about the April 5th incident for identity purposes after finding the incident occurred in a similar location and included

20

relevant factors surrounding the current offense. *See* Tex. R. Evid. 401, 404(b)(2). The record also shows the trial court conducted the necessary balancing test and found that the probative value of the evidence was not substantially outweighed by its prejudicial value and was relevant to a fact of consequence–the issue of identity– apart from its tendency to prove conduct in conformity with character. *See* Tex. R. Evid. 403; *Gigliobianco*, 210 S.W.3d at 641-42. We conclude the trial court did not abuse its discretion by finding Van Houten's testimony about the April 5th incident, which involved Cotton breaking his arm after fleeing from the same type of exposure and masturbation event that occurred on U.G.'s street, was relevant and its probative value was not substantially outweighed by its prejudicial value. We overrule issue four.

## CONCLUSION

Having overruled all of Cotton's issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on July 8, 2025
Opinion Delivered July 30, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

21